# Staunton

## JOHN F. SNYDER, JR. v. COMMONWEALTH OF VIRGINIA.

September 8, 1961.

Record No. 5243.

Present, All the Justices.

The opinion states the case.

*William G. Creasy; Harvey S. Lutins* (*T. W. Messick*, on brief), for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This is a companion case to the case of *Tasker* v. *Commonwealth*, Record No. 5270, this day decided.

John F. Snyder, Jr., herein referred to as the defendant, was charged in a joint indictment returned against the defendant, Ewell Grant Tasker and E. W. Brizendine, with grand larceny of a diamond ring, the property of Edward E. Foster. The defendant was granted a severance for trial and on April 21, 1960, a jury heard his case and found him guilty of the charge and fixed his punishment at three years in the penitentiary. He was sentenced accordingly.

The case is now before us, on a writ of error granted the defendant, for the determination of the following questions:

1. Whether the conviction of the defendant was illegal and void because he was denied a preliminary hearing.

2. Whether the testimony of Joel Krish, to whom E. W. Brizendine sought to sell the ring alleged to have been stolen was admissible.

3. Whether the evidence was sufficient to sustain the conviction of the defendant.

4. Whether the trial court erred in its rulings on instructions offered by the defendant.

The undisputed facts in the case are these:

Edward E. Foster, the complaining witness, was the owner and

sole operator of a small jewelry store on Williamson Road, in the city of Roanoke.

A week or ten days prior to February 26, 1960, the defendant went to Foster's store and engaged him in a conversation concerning a ring the defendant said he had lost. He inquired of Foster if he had seen such a ring, to which Foster replied in the negative.

On the morning of February 26, the defendant and Tasker met at a restaurant operated by the defendant in the city of Roanoke. Around noon the two men went together to "Billy's Beer Joint" on Salem Avenue, where they met and talked to Brizendine. The defendant had known Brizendine all of his life and had known Tasker for several years.

After leaving "Billy's Beer Joint," the defendant and Tasker returned to the defendant's restaurant. Between two and two-thirty o'clock P. M., they went, in the defendant's automobile, to Foster's jewelry store. Upon entering the store, the defendant told Foster he wanted to look at a lady's watch, as a gift for his wife. Foster showed the defendant and Tasker two watches, which were taken from a showcase.

While the defendant and Tasker were examining the watches, Brizendine entered the store. No sign of recognition passed between Brizendine on the one hand and the defendant and Tasker on the other.

Foster turned to Brizendine and said, "I'll be with you in a minute," whereupon the defendant told Foster, "Go ahead and wait on him, we're in no hurry."

Foster then inquired of Brizendine what he could do for him. Brizendine said he was interested in buying a set of rings for his wife. Foster removed a tray of rings from a showcase to display to Brizendine. They tray contained twelve slots to hold the rings in place, and before displaying the tray to Brizendine, Foster checked and determined that each slot was occupied by a ring.

One of the rings in the tray was the one later alleged to have been stolen. It was described as having a diamond setting of 0.97 of one carat, or 97 points, in a Columbia true fit mounting, a distinctive patented device designed to prevent the turning of the ring on the finger of the wearer. Foster was the only jewelry merchant in the city of Roanoke handling such a mounting. He had paid $525.00 for the ring, and it bore a tag showing its sale price to be $1,500.00.

Brizendine examined a number of rings from the tray, including

the Columbia-mounted diamond, which he returned to Foster and which Foster replaced in the tray.

While Brizendine was examining other rings, the defendant asked Foster a question concerning one of the watches, and Foster turned to answer him. The defendant then said, "Well, we're looking around and we'll be back later." The defendant and Tasker then left the store.

Foster then returned his attention to Brizendine. The latter handed Foster a set of rings and said, "Hold these, I'll bring my wife back in a couple of hours; I want her to look at them and I'm going to buy them." Brizendine then left the store, within thirty to sixty seconds of the time the defendant and Tasker had left.

Foster immediately discovered that the Columbia-mounted diamond ring was missing. He notified the police department of his loss, and furnished the police a description of Brizendine and of the missing ring.

Brizendine, shortly after leaving Foster's store, appeared at the United Pawn Shop in the city of Roanoke. The operator of this shop, Joel Krish, had dealt in rings and diamonds for fifteen years, and had known Brizendine for many years. Brizendine exhibited to Krish a ring containing a diamond, described by Krish as having eighty or ninety points in a Columbia true fit mounting. Brizendine asked Krish what he would give on the ring, and Krish replied that he would allow $300.00. Brizendine became angered at Krish's offer, placed the ring in his pocket and left the store. In a short time, Krish received a telephone call from the police concerning the ring stolen from Foster, and Krish told the police to come to his store, that he had some information for them.

The defendant and Tasker after leaving Foster's store, returned to the defendant's restaurant. After a short interval, they went to "Billy's Beer Joint" and "picked up" Brizendine. The three men then proceeded, in the defendant's automobile, to the home of June Fuller, the "girl friend" of Brizendine. En route, Tasker and Brizendine discussed going to Richmond, because Tasker had some friends in that city.

The defendant did not testify or offer any evidence in his behalf.

The record does not disclose whether the missing ring has ever been recovered. Brizendine was convicted of the theft of the ring, and is now serving a sentence in the penitentiary. Tasker, like the defendant, was convicted as an aider and abettor in the theft.

■ The defendant first contends that his conviction is illegal and

void because he was denied a preliminary hearing, as required by § 19.1-163.1, Code of Virginia, 1950, as amended. This question arose in this case in the following manner:

The defendant was arrested on March 3, 1960, and charged with the theft of the ring. On March 18, 1960, he appeared before the Municipal Court of the city of Roanoke, for a preliminary hearing in connection with the said charge. The Commonwealth presented its evidence, and at the conclusion thereof, the defendant moved to strike the Commonwealth's evidence. The judge of the Municipal Court took this motion under advisement, and as far as the record discloses, has not yet acted on the motion, either to grant or to deny it.

On April 4, 1960, the indictment was returned, upon which the defendant was later convicted by the jury. The final order, overruling the defendant's motion for a new trial and sentencing the defendant in accordance with the jury's verdict, was entered on May 5, 1960.

The defendant raised no objection to the lack of, or the irregularity in, the preliminary hearing, before his trial on the indictment. In fact, the first mention of this point appears in a petition filed by the defendant, in the trial court, on June 21, 1960, forty-seven days after the entry of the final order. This petition prayed that his conviction be set aside and the indictment quashed because he had been denied a preliminary hearing. The petition was denied by the trial court on the grounds that the defendant had made no objections to being tried on the indictment prior to trial and that the petition was filed more than twenty-one days after the final judgment.

Code § 19.1-163.1, relied on by the defendant, reads as follows:

"No person who is arrested on a charge of felony shall be denied a preliminary hearing upon the question of whether there is reasonable ground to believe that he committed the offense and no indictment shall be returned in a court of record against any such person prior to such hearing unless such hearing is waived in writing."

The defendant contends that the requirement for a preliminary hearing, as set forth in the foregoing section, is jurisdictional, and that objection relating thereto can be raised at any time in the proceedings, or for the first time on appeal, or even by the court itself.

The quoted code section clearly permits the waiver, by a person arrested for a felony, of his preliminary hearing, albeit such waiver must be in writing.

It is a well settled rule of criminal procedure that if an accused may waive a provision concerning the steps to be followed in a criminal

prosecution, such provision is procedural, and not jurisdictional. *Bowen* v. *Commonwealth*, 132 Va. 598, 602, 111 S. E. 131, 132; *Hanson* v. *Smyth*, 183 Va. 384, 390, 32 S. E. 2d 142, 144.

It is an equally well settled rule that objection to a procedural defect must be timely made if it is to avail an accused when attacking his conviction, either in the trial court or on appeal. Code, § 19.1-165; *Briggs* v. *Commonwealth*, 82 Va. 554, 561; *McCue* v. *Commonwealth*, 103 Va. 870, 1006, 49 S. E. 623, 631; 14 Am. Jur., Criminal Law, § 214, p. 917, § 242, pp. 935, 936.

The Supreme Court of the United States in the case of *Dowdell and Harn* v. *United States*, 221 U. S. 325, 31 S. Ct. 590, 55 L. ed. 753, 758, held as follows:

"Objections are made as to the want of proper arrest and preliminary examination of the accused before a magistrate, and that the information was not verified by oath or affidavit. If tenable at all, no objections of this character appear to have been made in due season in the court of first instance. Objections of this sort must be taken before pleading the general issue by some proper motion or plea in order to be available to the accused. 1 Bishop, Crim. Proc. § 730."

In the case now before us, assuming that the hearing before the Municipal Court was not such a hearing as is prescribed by Code § 19.1-163.1, and conceding that the record does not disclose that the defendant waived the hearing in writing, we are of the opinion that the requirement for such a hearing is procedural only, and not jurisdictional, and any defect in connection therewith must be raised before trial, or forever lost as a grounds of objection. *Commonwealth* v. *Cohen*, 2 Va. Cas. (4 Va.) 158, 159; *Angel* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 231, 233; *Campbell* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 314, 316.

The defendant's first contention is without merit.

██ The defendant's next contention is that the trial court erred in admitting, over the objections of the defendant, the testimony of Joel Krish as to the occurrence in the pawn shop when Brizendine attempted to sell the allegedly stolen ring to Krish. The defendant argues that this testimony was irrelevant and was hearsay, as it pertained to him.

This contention is without merit.

The Commonwealth's case against the defendant was based upon the theory that he was an accomplice of Brizendine in the commission of the crime—that he had aided and abetted in the theft of the ring.

It was incumbent upon the Commonwealth, in proving her case against the defendant as an aider and abettor, to establish the commission of the substantive offense by Brizendine, the principal. It was the defendant's position in the trial court that no offense had been proven against Brizendine, and that therefore the defendant could not be held as an accomplice.

In establishing the crime of the principal, his actions and declarations immediately after the alleged theft, and in furtherance thereof, connected, as they were, with other evidence of his involvement in the crime, were directly in issue in the case against the defendant. *Hutchinson* v. *Commonwealth*, 133 Va. 710, 716, 717, 112 S. E. 624, 626. 1 Mich. Jur., Accomplices and Accessories, § 7, p. 52.

An attempt, by the principal to an offense, to dispose of the fruits of a crime is competent evidence, to be considered with other facts and circumstances, of perpetration of the crime itself, admissible in the trial of an alleged aider and abettor to show the commission of the basic offense by the principal.

Defendant's next contention is that the evidence was not sufficient to support his conviction.

Under Code § 18.1-11, in the case of felony, every principal in the second degree may be indicted, tried, convicted and punished in all respects as if a principal in the first degree.

"A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Brown* v. *Commonwealth*, 130 Va. 733, 736, 107 S. E. 809, 810.

We recognize the principle, repeatedly set forth in our decisions, that the mere presence of a party when a crime is committed is not sufficient to render one guilty as an aider and abettor. *Harold* v. *Commonwealth*, 147 Va. 617, 623, 136 S. E. 658, 660; *Smith* v. *Commonwealth*, 185 Va. 800, 819, 40 S. E. 2d 273, 282.

We have, however, in many cases reaffirmed the proposition that if a person is present at the commission of a crime, inciting, encouraging, advising or assisting in the act done, he is deemed to be an aider and abettor, and is liable as principal. *Horton* v. *Commonwealth*, 99 Va. 848, 863, 864, 38 S. E. 184, 185; *Brown* v. *Commonwealth, supra*, 130 Va., at pp. 736, 737; *Rasnake* v. *Commonwealth*, 135 Va. 677, 707, 708, 115 S. E. 543, 553; *Spradlin* v. *Commonwealth*, 195 Va. 523, 527, 528, 79 S. E. 2d 443, 445.

In the case before us, where the defendant has been convicted by

a jury whose verdict has been approved by the trial judge, and where the defendant assails the sufficiency of the evidence, under familiar rules it is our duty to look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong. If there is evidence to sustain the verdict, this court should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury. Code § 8-491; *Hall* v. *Commonwealth*, 179 Va. 652, 658, 20 S. E. 2d 527, 529; *Ingram* v. *Commonwealth*, 192 Va. 794, 803, 66 S. E. 2d 846, 851.

Under the evidence, the jury could reasonably and properly have inferred and concluded that the defendant's visit to Foster's store a week or ten days prior to the theft was for the purpose of surveying the situation for the later theft; that the meeting of the defendant, Tasker and Brizendine before the theft was for the purpose of laying their plans for the crime; that Snyder's and Tasker's presence in the store was for the purpose of diverting Foster's attention while Brizendine stole the ring and that the ring was in fact stolen when Foster's attention was so diverted; that Snyder and Tasker were present to serve as lookouts and to aid Brizendine to escape in the event he was detected stealing the ring; that the three men met after the crime to divide the spoils therefrom or to devise means of disposing of the stolen article.

Under the set of facts and circumstances presented in evidence, the jury was warranted in finding that the defendant was present inciting, encouraging, advising and assisting the commission of the crime, and therefore an aider and abettor thereto.

We find the evidence sufficient to sustain the jury's verdict.

▆ Defendant's final contention is that the trial court erred in refusing to grant instructions G and H offered by the defendant.

Instruction G reads as follows:

"The Court instructs the jury that before you can convict the defendant, Snyder, in this case, you must believe from the evidence in this case, beyond a reasonable doubt, that the diamond ring exhibited to the witness, *Krisch*, by *the defendant*, was the same identical ring missing from the Foster Jewelry Company store."

This instruction was properly refused.

The trial court, in other instructions highly favorable to the defendant, had clearly and fully informed the jury on burden of proof, reasonable doubt, presumption of innocence, suspicion of guilt, circumstantial evidence and hypothesis of innocence. Instruction G

would have over-emphasized the burden on the Commonwealth and would have singled out and directed the jury's attention to one fact, whereas it was the jury's duty to consider all of the evidence in reaching a conclusion. The conviction of the defendant under the evidence in this case was not solely dependent upon the Commonwealth showing that the ring exhibited by Brizendine to the witness, Krish, was the identical ring stolen from the Foster Jewelry Company. To support the conviction of the defendant the Commonwealth had only to show that Brizendine stole the ring described by Foster and that the defendant was present aiding and abetting in the theft.

Instruction H reads as follows:

"The Court instructs the jury that there can be no such thing as an aider and abettor unless there is a principal in the commission of a crime, *and it is, therefore, necessary for the Commonwealth to prove beyond a reasonable doubt that the principal is guilty of the offense charged before the jury can consider the question as to whether there is an aider or abettor.* And the jury is instructed that mere presence is not sufficient to constitute one an aider and abettor, and that, whenever a reasonable doubt exists as to the intention of one charged as an aider and abettor, he cannot be found guilty as such; and the jury is further instructed that mere consent is not sufficient to constitute one an aider and abettor, but before a defendant charged as an aider and abettor in the commission of a criminal offense can be convicted, it is incumbent upon the Commonwealth to prove beyond a reasonable doubt that the defendant so charged as an aider and abettor was present and shared in the criminal intent of the principal."

When the trial court refused this instruction, the defendant offered, and the court granted, instruction F, which was identical with the refused instruction, except that the italicized portion of Instruction H was omitted.

Instruction H was properly refused.

As has been pointed out, before the accessory to a crime can be convicted as such, it must be shown that the crime has been committed by the principal. However, it is not necessary that the principal should be convicted of the basic offense. Code § 18.1-13. The italicized language of instruction H could have had no other effect than to mislead and confuse the jury and to suggest the erroneous proposition that the jury was trying Brizendine and that it should first convict him as a condition precedent to convicting the defendant.

Instruction F, when read together with all the other instructions

granted by the trial court, could have left no doubt in the minds of the jurors that they could not find the defendant guilty unless they found also that Brizendine had committed the substantive offense.

We find no error in the proceedings in which the defendant was convicted, and the judgment complained of is, therefore,

*Affirmed.*