## Salem

KENTON JAY BENNETT AND
PAMELA JO MILLER

v.

COMMONWEALTH OF VIRGINIA

Nos. 1066-87-3 and 1067-87-3

Decided May 16, 1989

COUNSEL

David L. Scyphers (Johnson, Scyphers & Austin on brief), for appellants.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KOONTZ, C.J.—In a consolidated jury trial, Pamela Jo Miller and Kenton Jay Bennett, appellants, were convicted of two counts each of abduction in violation of Code § 18.2-47. Additionally, Bennett was convicted of one count of destruction of private property. Appellants raise three issues in this appeal[1]: (1) whether the

---

[1] Although tried and convicted in a consolidated trial, appellants appealed their convictions individually. Nevertheless, for purposes of this opinion we consolidate the appeals since the parties raise the same issues. While Bennett appealed his conviction of destruction of private property, he does not address it on brief, apparently asserting the sufficiency of the evidence defense to include the abduction and destruction of private property convictions. For the reasons stated in the opinion and because the record contains evidence suffi-

evidence was sufficient to sustain a conviction of abduction as contemplated by the language of Code § 18.2-47; (2) whether the trial court erred in refusing appellants' proffered jury instruction based on Code § 31-1; and (3) whether Code § 18.2-47 is unconstitutionally vague as applied in this case. Finding no error, we affirm the convictions.

Pamela Jo Miller and Michael Tallman were divorced in Colorado in 1985. A Colorado decree awarded Tallman sole and permanent custody of the twin daughters born of the marriage in 1983. After the divorce, Tallman and the children remained in Colorado, and Miller moved to Washington state. On March 23, 1986, Tallman was shot in his home in Denver. Due to the serious nature of his injuries, Tallman was unable to care for the two year old twins. Consequently, Tallman asked his father to come to Denver, pick up the girls and take them to his home in Bristol, Virginia, until Tallman recovered.

Miller was told of the shooting incident on March 24, 1986, and on March 25, she flew to Denver to check on the welfare of her daughters and Tallman's condition. Despite her efforts, Miller was unable to gain any information as to the whereabouts of her children. Further, when she inquired at the hospital of Tallman's condition, she claims that she was told "he was no longer there, so [she] assumed he was deceased." Assuming that Tallman was dead and that her daughters were being hidden from her by Tallman's parents, Miller and her boyfriend, Bennett, came to Washington County, Virginia, in an effort to locate her children. On March 31 at approximately 9 p.m., appellants went to the Tallman's residence. After Miller was refused admittance, Bennett entered the house through the basement and began knocking on the door leading to the interior of the house. Mrs. Tallman told Bennett to go away, whereupon Bennett forced the door open, causing damage to it. He entered the house and went to the front door and let Miller inside. Mrs. Tallman testified that Bennett pulled the phone out of the wall while she was attempting to use it to call her husband to inform him of the situation. Mrs. Tallman further testified that her daughter pleaded with Miller not to take the children away. Miller replied, "they are my kids, and I am going to take them." Miller and Bennett picked up the twins and

---

cient to establish his guilt of destroying private property beyond a reasonable doubt, we affirm Bennett's conviction of this offense.

left the house. Significantly, during this entire incident Miller did not inquire about or mention the condition of the children's father. Later that evening, Miller, Bennett and the children flew to Washington state. Miller testified that once in Washington she made no attempt to conceal the children. On April 9, 1986, Michael Tallman regained custody of the girls through the social services in Washington state.

## I. Sufficiency of the Evidence

In their first assignment of error, appellants contend that the Commonwealth's evidence was insufficient to sustain their convictions for abduction. Appellants' challenge to the sufficiency of the evidence is twofold and for the sake of clarity, we address each individually.

## A. The Taking

Appellants do not dispute the fact that they took the children away from the care of their grandparents. Rather, appellants argue that they did not take the children from one "lawfully entitled to [their] charge" as contemplated by the language of Code § 18.2-47.[2] Appellants base this argument in part on Code § 31-1, which provides in pertinent part that "upon the death of either parent the survivor shall be the natural guardian of the person of such child." *See also Judd v. Van Horn*, 195 Va. 988, 81 S.E.2d 432 (1954) (upon the death of the parent who has held custody under a divorce decree, the right to custody automatically inures to the surviving parent). This argument is without merit. Assuming that Miller believed Tallman was dead, the fact remained that he was not. Consequently, Code § 31-1 did not apply and Miller had no legal right to custody of the children. Legal custody of the children remained with Tallman pursuant to the Colorado decree awarding him sole and permanent custody.

In addition appellants argue that the grandparents were not "lawfully entitled to [the children's] charge" because the father had attempted to transfer the children's custody without judicial

---

[2] Code § 18.2-47 provides in pertinent part that "[a]ny person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent . . . to withhold or conceal him from any person . . . lawfully entitled to his charge, shall be deemed guilty of 'abduction' . . . ."

proceedings. Nothing in the record supports this argument. There is no evidence that Tallman attempted or even desired to transfer legal custody to the children's grandparents. The Commonwealth's evidence showed that due to the severe nature of his wounds Tallman was unable to care for his children. Under such circumstances, Tallman as the custodial parent had the right, moreover the duty, to entrust temporarily the care of his minor children with another. In doing so he relinquished physical custody without relinquishing his legal custody. Judicial proceedings are not required for such temporary placements. Because the children were lawfully in the physical custody of their grandparents, the grandparents were "lawfully entitled to [their] charge" as contemplated by Code § 18.2-47. Finally, we note that if we were to adopt appellants' argument that the children's grandparents in this case were not "lawfully entitled to [their] charge" as contemplated by Code § 18.2-47 because they had only temporary physical custody, it would necessarily follow that no relative, teacher, babysitter, day-care provider or others to whom a custodial parent entrusts the temporary care of a minor child would fall within the provisions of this statute. This we decline to do. Such an interpretation of this statute has no basis in the language of the statute or in logic.

Because we find that Miller was not entitled to custody of the children, and that Tallman could and did entrust the care of the children to their grandparents, we hold that the evidence was sufficient to sustain the jury's finding that the children were taken from one "lawfully entitled to their charge."

## B.   Intent

■ Appellants next argue that the evidence was insufficient to prove that they possessed the criminal intent necessary to commit abduction under Code § 18.2-47. Miller argues that since she believed that Tallman was dead and pursuant to Code § 31-1 she was entitled to custody of the children, she never formed the criminal intent necessary to commit abduction. Likewise, Bennett argues that he also lacked the intent to commit abduction as he believed he was merely helping Miller enforce her parental rights. We will assume, without deciding, that a reasonable belief of a lawfully superior custodial right negates the criminal intent contemplated by Code § 18.2-47. Thus, the issue we must resolve is

whether Miller's belief that Tallman was dead was reasonable under the circumstances, thereby establishing that appellants lacked the intent to commit abduction.

Whether Miller's belief that Tallman was dead was reasonable under the circumstances was a question of fact for the jury to resolve, and their finding will not be disturbed on appeal where supported by the evidence. *Carter v. Commonwealth*, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982); *see also Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

At the trial, the jury was instructed that in order to find appellants guilty of abduction, the Commonwealth had to prove beyond a reasonable doubt that appellants acted without justification or excuse and with the intent to withhold or conceal the children from Michael Tallman or his father and step-mother.[3]

The record reveals that Miller remained in Denver for three days, during which time she spoke to Tallman's mother and made several inquiries at the hospital. Miller stated that she was unable to gain any information regarding Tallman's condition until she was finally told that he was "no longer at the hospital." Based on that information alone, Miller testified that she concluded that Tallman was deceased. Miller further testified that she did not read the obituary column in the local newspapers. Neither she nor Bennett inquired of Tallman's condition at the time they took the children from the care of their grandparents. Rather, the evidence discloses that after gaining entry to the house through the use of force, Miller stated that the children were hers and that she intended to take them with her.

Although Miller testified that she did not intend to take the girls until the moment she saw them, the evidence supports the conclusion that she traveled from Denver for that purpose. Given Miller's length of stay in Denver, her meager efforts to determine Tallman's condition during that time, her failure to make further inquiries into Tallman's condition when she arrived at the grandparents' home, and the manner in which she and Bennett took the children, the jury could reasonably conclude that Miller's belief

---

[3] Appellants do not assert that they acted with justification or excuse because the children were not being properly cared for by the grandparents. Nor do they assert that a reasonable belief of a lawfully superior custodial right would establish justification or excuse as contemplated by Code § 18.2-47. Consequently, we do not address those issues.

that Tallman was dead, if she had such a belief, was not reasonable under the circumstances, thereby establishing that appellants possessed the necessary intent to commit abduction.

Therefore, we hold that the Commonwealth's evidence was sufficient to sustain the jury's finding that appellants acted with the intent to take and withhold the children from one "lawfully entitled to [their] charge" as contemplated by Code § 18.2-47.

## II.  Jury Instruction

■ Appellants next contend that the trial court erred by refusing to grant appellants' jury instruction based on Code § 31-1. We find no merit in this argument. An instruction is properly refused when it is unsupported by the evidence. *Frye v. Commonwealth*, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986); *Terry v. Commonwealth*, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987). As stated, the evidence revealed that Tallman was not dead, and, therefore, Code § 31-1 did not apply. Because the proffered instruction was not supported by the evidence, we hold that the trial court properly refused the instruction.

## III.  Constitutionality of Code § 18.2-47

On appeal, appellants allege that Code § 18.2-47 is unconstitutionally vague as applied in this case since it fails to state who has superior custody rights between a natural parent and a grandparent, and therefore fails to indicate who was "lawfully entitled to . . . charge" of the minor children. However, appellants failed to state this objection at the trial level, and therefore, consideration of this issue by this Court is barred by Rule 5A:18 of the Rules of the Supreme Court of Virginia.

We do, however, consider appellants challenge to that portion of § 18.2-47 which provides that:

such offense, if committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending, shall be a Class 1 misdemeanor in addition to being punishable as contempt of court. Provided further, however, that such offense, if committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending and the person abducted is removed

from the Commonwealth by the abducting parent, shall be a Class 6 felony in addition to being punishable as contempt of court.

■ "[A]n act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him." *Hancock v. Cox*, 212 Va. 215, 218, 183 S.E.2d 149, 151 (1971) (citations omitted). Further, when testing the validity of a statute, "courts must presume that the legislative action is valid. Consequently, the burden is on the challenger to demonstrate the constitutional defect." *Coleman v. City of Richmond*, 5 Va. App. 459, 462, 364 S.E.2d 239, 241 (1988) (citations omitted).

Appellants argue that § 18.2-47 is unconstitutionally vague because it does not inform an individual whether they can be held in contempt in a court of the Commonwealth or that of a sister state. Further, appellants contend that the statute does not clearly indicate whether it applies when someone is removed from a sister state to the Commonwealth. Both arguments are without merit. Clearly, the Commonwealth of Virginia can not enact legislation requiring a sister state to enforce contempt proceedings. Thus Code § 18.2-47 necessarily contemplates only contempt orders issued by a court of this Commonwealth. Further, the Commonwealth does not have jurisdiction to render an act committed in another jurisdiction a criminal act in Virginia, and therefore § 18.2-47 only applies to those cases in which the person abducted is removed from the Commonwealth to a sister state. Accordingly, we find that appellants have failed to demonstrate that Code § 18.2-47 is unconstitutionally vague.

For the foregoing reasons, the convictions are affirmed.

*Affirmed.*

Coleman, J., and Moon, J., concurred.