UPON A REHEARING EN BANC
ANNUNZIATA, Judge.
Tomika T. Taylor (“appellant”) appeals her conviction as a principal in the second degree for abduction in violation of Code § 18.2-47.[1] She contends the evidence was legally insuf *57 ficient to support her conviction because the person she aided in committing the abduction was the natural father of the child abducted. She argues that the father’s legal justification in taking the child precludes her conviction. A panel of this Court reversed appellant’s conviction on that ground. See Taylor v. Commonwealth, 28 Va.App. 498, 507 S.E.2d 89 (1998). Upon rehearing en banc, we affirm appellant’s conviction.
I.
FACTS
At approximately 1:00 a.m. on December 26, 1996, appellant and her flaneé, Avery Moore, arrived at the home of Meshia Powell, ostensibly to see the ten-month-old son of Powell and Moore.[2] Powell and Moore had never been married and had not lived together. The child had been in Powell’s care since his birth. Moore was not present for the birth, had seen the child only once, and had never paid child support. No custody order was in effect and no proceeding was pending.
Prior to going to Powell’s home that morning, Moore and appellant drove to the home of Powell’s aunt. Moore told Powell’s aunt that “he had come to take the baby” and he wanted to telephone Powell. Appellant told Moore to inform Powell that Moore’s mother was “out in the car” and wanted to see the child. However, Powell’s aunt did not see Moore’s mother in the car.
Moore telephoned Powell and asked if he could see the child, stating that “his mother was with him” and that he had brought gifts. He did not tell Powell of his intent to take the child. After Powell gave Moore her address so they could come to see the child, Moore and appellant departed in their car.
*58 Upon the arrival of Moore and appellant at Powell’s home, Powell’s father answered the door. Moore and appellant “kind of pushed [him] away from the door and came in and asked for [Powell].” Moore repeatedly stated he wanted to see the child and hold him. Called by her father, Powell came downstairs with the child but refused to let Moore hold him and began to go back upstairs. Appellant came up behind Powell on the stairs and began arguing with her about Moore’s holding the child. After appellant pushed Powell, causing the child to fall from Powell’s arms, appellant and Powell started fighting. During this altercation, appellant somehow picked up the child and passed him to Moore. Powell tried to come back down the stairs, but “[appellant blocked] the steps so [Powell] couldn’t get by.” Powell’s father grabbed the child and began to struggle with Moore for control. At some point, appellant left Powell’s home, jumped in the car and called to Moore to “hurry up” and “get in the car.” Once Powell’s father let go of the child in order to prevent him from being hurt, Moore got into the car with the child and appellant drove away. Later that day, North Carolina police stopped appellant and Moore in their car but, about an hour later, allowed them to continue on to their home in Georgia.
Powell obtained the license number of the vehicle appellant drove and reported the incident to police. On January 2, 1997, police arrested appellant and Moore in Decatur, Georgia, and retrieved the child. After being Mirandized, appellant gave a brief written statement in which she denied handing Moore the child, stated she fought Powell in self-defense, and denied driving the car from the scene.
At trial, appellant contended that she and Moore had not planned to take the child in advance, that she hit Powell in self-defense, that she did not help Moore take the child, and that she continuously encouraged Moore to return the child. In contrast to her written statement, she admitted driving the car from the scene, but she insisted she drove only to the next house because she did not have a valid driver’s license. She admitted knowing that Moore had the child in the car when *59 she drove off and that she made no effort to call Powell afterwards.
Appellant moved to strike the charge of abduction at the close of the Commonwealth’s evidence. She contended that Moore had a legal right to take the child because no custody order was in effect and that, because Moore was not guilty of abduction, she could not be guilty as a principal in the second degree. The court denied the motion and convicted appellant of abduction, expressly noting her culpability as a principal in the second degree.[3] The court also convicted appellant of assault and battery, but she challenges only the abduction conviction on appeal.
II.
SUFFICIENCY OF THE EVIDENCE
Code § 18.2-47 provides in pertinent part:
Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of “abduction”.... Abduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony.
Appellant argues that, in the absence of a court order which curtailed Moore’s custodial rights as a natural parent, Moore’s taking of his child did not violate Code § 18.2-47 because his conduct was legally justified. Appellant further argues that, because Moore’s actions did not constitute abduction, she cannot be convicted as a principal in the second degree. We disagree and affirm the conviction.
*60 The principles governing the criminal liability of accomplices are well settled. Under Virginia law, an accomplice is “a person who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime.” Zirkle v. Commonwealth, 189 Va. 862, 876, 55 S.E.2d 24, 32 (1949). A principal in the second degree is an accomplice who is “present, aiding and abetting, and intend[s] his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or in some way help the person committing the crime to commit it.” McGill v. Commonwealth, 24 Va.App. 728, 733, 485 S.E.2d 173, 175 (1997).
“In the case of every felony, every principal in the second degree ... may be indicted, tried, convicted and punished in all respects as if a principal in the first degree____” Code § 18.2-18. While the principal offender need not be convicted of the underlying offense in order to sustain the conviction of an accomplice, the Commonwealth must prove that the underlying offense has been committed by the principal offender. See Snyder v. Commonwealth, 202 Va. 1009, 1017, 121 S.E.2d 452, 458-59 (1961); Hatchett v. Commonwealth, 75 Va. 925, 932 (1882). In short, accomplice liability is derivative in nature. See People v. Prettyman, 14 Cal.4th 248, 58 Cal.Rptr.2d 827, 926 P.2d 1013, 1018 (1996) (“Accomplice liability is ‘derivative,’ that is, it results from an act by the perpetrator to which the accomplice contributed.”).
Proceeding from the premise that her criminal liability as a principal in the second degree derives from Moore’s liability as a principal in the first degree, appellant raises the following specific issues on appeal: (1) whether a natural parent acting under the circumstances of this case is justified or excused from liability for the crime of abduction and (2) whether a person charged as an accomplice is shielded from criminal liability based derivatively on the parent’s excuse or justification.
A number of jurisdictions have recognized that, in the absence of a court order awarding custody to another, a parent cannot be convicted of abduction and other similar *61 crimes by taking exclusive custody of his or her child. See, e.g., State v. Stocksdale, 138 N. J.Super. 312, 350 A.2d 539, 541 (1975) (recognizing that, because “each parent has an equal right to custody of a child in the absence of a court order, a parent does not commit the crime of kidnapping by taking exclusive possession of the child where no such order exists.”). See also William B. Johnson, Annotation, Kidnapping or Related Offense by Taking or Removing of Child by or Under Authority of Parent or One In Loco Parentis, 20 A.L.R.4th 823, § 3 (1983 & Supp.1998). Although this reasoning has been adopted by a majority of courts considering the issue, there is case law to the contrary. See State v. Donahue, 140 Ariz. 55, 680 P.2d 191, 193 (App.1984) (construing custodial interference statute and, even assuming the defendant father had a right to custody of his child, holding that father’s right to custody was “at most a right to co-equal custody with the child’s natural mother” and that “[h]e did not have the right to custody of the child to the exclusion of the natural mother” without “a court order to that effect”); State v. Butt, 656 A.2d 1225, 1226-27 (Me.1995) (construing a statute that proscribes one parent from taking a child from the custody of the other parent with the intent to secrete that child and with knowledge that he or she has no legal right to do so and finding that father violated the statute, notwithstanding the fact that father’s actions did not violate a court order, because father deprived mother of her legal right to joint custody in the absence of a court order curtailing mother’s right).
While the precise issue before us has not been resolved by Virginia’s appellate courts, several elements of the question have been addressed. Whether a parent comes within the ambit of Code § 18.2-47 was at issue in Diehl v. Commonwealth, 9 Va.App. 191, 385 S.E.2d 228 (1989). In that case, the defendant was convicted of first degree murder, abduction, simple assault and felony child neglect, based on evidence that he “shackl[ed] an unclothed child to the floor of a bus for several weeks, during which time the child [was] required to drink his own urine, eat his own feces and [was] subjected to body and head blows which cause[d] his death____” Id. at *62 192, 195, 385 S.E.2d at 229, 231. Among his claims on appeal, Diehl contended that a parent cannot be prosecuted under Code § 18.2-47 for the abduction of his own child. See id. at 193-94, 385 S.E.2d at 230. We held that the statute does not exempt parents from liability and affirmed Diehl’s conviction, stating that, “in cases where detention and physical punishment are inflicted by a custodial parent,” a parent who exceeds “due moderation” may become criminally liable for abduction. Id. at 194-95, 385 S.E.2d at 230. We also addressed the issue of parent liability under Code § 18.2-47 in Bennett v. Commonwealth, 8 Va.App. 228, 380 S.E.2d 17 (1989). In Bennett, we affirmed the abduction conviction of a mother who, in derogation of a decree awarding father “sole and permanent custody,” took her children from the temporary physical custody of the children’s grandparents. See id. at 231-34, 380 S.E.2d at 19-20. Neither Diehl nor Bennett, however, directly addressed the specific issues raised here.
Code § 18.2-47 exempts three persons from liability: (1) individuals who are legally justified, (2) individuals who are legally excused, and (3) any law-enforcement officer acting in the performance of his or her duty. Only the second exemption, “legal excuse,” is raised by the contentions in this case.
While the terms, “legal justification,” and “excuse” are often used interchangeably, they are distinct legal concepts. See, e.g., George P. Fletcher, Rethinking Criminal Law 759-817 (1978); Joshua Dressier, New Thoughts About the Concept of Justification in the Criminal Law: A Critique of Fletcher’s Thinking and Rethinking, 32 UCLA L.Rev. 61, 65-67 (1984); Douglas N. Husak, Justifications and the Criminal Liability of Accessories, 80 J.Crim.L. & Criminology 491, 491 n. 4 (1989); Robert F. Schopp, Justification Defenses and Just Convictions, 24 Pac.L.J. 1233, 1237-38 (1993). While the scholarly works written on the subject underscore the difficulties encountered in defining the principles which comprise and underlie the theories of justification and excuse and in developing a generally accepted body of law setting forth the applicability of each defense in various contexts, see Dressier, *63 supra, at 67-68; Schopp, supra, at 1300-02; Kent Greenawalt, The Perplexing Borders of Justification and Excuse, 84 Colum.L.Rev. 1897, 1898, 1902-03, 1927 (1984), some distillation of the relevant principles is possible.
As to the concept of excuse, there appears to be general agreement with the proposition that “[e]xcuses, in contrast [to justifications], are always personal to the actor.Fletcher, supra, at 762. Excuses rest on the presence within the actor of a condition or status that exculpates him or her from culpability for otherwise criminal conduct. See Schopp, supra, at 1238 (“Excuses are specific to defendants because they exculpate these individuals for their criminal conduct due to disabilities, such as infancy or psychological disorder, that undermine the attribution of culpability for this particular conduct to these defendants.”). Because excuses relate to a condition that is peculiar to the actor, such defenses are generally considered to be non-delegable and, thus, unavailable to an accomplice. See United States v. Lopez, 662 F.Supp. 1083 (N.D.Cal.1987), aff'd, 885 F.2d 1428 (9th Cir. 1989). See also Fletcher, supra, at 761-62; Glanville Williams, The Theory of Excuses, Crim. L.Rev. 732, 735-36 (1982).[4] Based on the foregoing principles, even were we to conclude that Moore’s abduction of the child was excused by *64 his parental relationship to the child, appellant’s “accessorial liability would not be undercut by [Moore’s] personal excuse.” Fletcher, supra, at 62.[5] In short, the defense of “legal excuse,” is personal to Moore and unavailable to appellant.
Having concluded that the evidence does not support the finding that appellant’s conduct was legally excused, it remains only to determine whether the evidence adduced at trial was sufficient to establish appellant’s culpability as a principal in the second degree to abduction under Code § 18.2-47. In reviewing the sufficiency of evidence on appeal, “the appellate court must examine the evidence and all inferences reasonably deducible therefrom in the light most favorable to the Commonwealth, the prevailing party in the trial court.” Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998). “We may not disturb the trial court’s judgment unless it is ‘plainly wrong or without evidence to support it.’ ” Barlow v. Commonwealth, 26 Va.App. 421, 429, 494 S.E.2d 901, 904 (1998) (quoting Beavers v. Commonwealth, 245 Va. 268, 282, 427 S.E.2d 411, 421 (1993)). Furthermore, “[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.” Sandoval v. Commonwealth, 20 Va.App. 133, 138, 455 S.E.2d 730, 732 (1995).
Viewing the evidence adduced at trial in the light most favorable to the Commonwealth, the trial court could reasonably and properly have concluded that Moore, as the principal in the first degree, committed abduction by forcibly seizing his child with the intent to withhold the child from Powell, the child’s mother and a person “lawfully entitled” to the child’s charge under these facts. See Snyder, 202 Va. at 1017, 121 S.E.2d at 458-59. On the night in question, Moore stated to *65 Powell’s aunt that he “had come to take the baby.” Subsequently, Moore falsely indicated to Powell that his mother was present and was interested in seeing the child. Upon arrival at Powell’s home, Moore forcibly took the child from the arms of Powell’s father and returned to his residence in Decatur, Georgia, where he remained with the child until his arrest approximately one week later.
Moreover, the court’s conclusion that appellant aided and abetted Moore with actions intended to help him complete the abduction was supported by evidence beyond a reasonable doubt. See McGill, 24 Va.App. at 733, 485 S.E.2d at 175. At the home of Powell’s aunt, appellant suggested to Moore that he falsely inform Powell that his mother was with them. After being admitted into Powell’s home, appellant handed the child to Moore after initiating a confrontation with Powell, which caused Powell to lose her grasp of her child. Appellant then prevented Powell from regaining her child by blocking the staircase. Finally, appellant drove Moore away from PoweU’s home with knowledge that Moore had taken the child with him.
Therefore, we hold that the evidence is sufficient beyond a reasonable doubt to support appellant’s conviction of abduction on a theory of accomplice liability.[6]

Affirmed.

. Taylor was convicted under § 18.2-47 as it was drafted in 1996. All references herein are to the statute as written prior to its revision in 1997.

. At the time of this incident, appellant and Moore were en route to their residence in Decatur, Georgia, after having spent some time in Virginia.

. Based on the trial court’s judgment, we limit our review to an analysis of appellant’s culpability as a principal in the second degree and do not address whether the evidence was sufficient to convict her as a principal in the first degree.

. Justification defenses, on the other hand, "appeal to the special circumstances in which the ordinarily criminal conduct was performed, and they exonerate the defendant because the conduct was socially acceptable under these conditions.” Schopp, supra, at 1238; Husak, supra, at 496 (“Justifications are defenses that arise from properties or characteristics of acts; excuses are defenses that arise from properties or characteristics of actors.”) The defense of justification, unlike that of excuse, generally provides a right to persons other than the primary actor to assist, or to directly defend the interests of, the primary actor because a third party is in the same position as the primary actor to evaluate the circumstances warranting the conduct in question. See Fletcher, supra, at 761-62; Schopp, supra, at 1238 ("[Justification] defenses would apply to any other actor who performed the same conduct in the same circumstances.”). Claims of justification include the defenses of "consent, lesser evils, self-defense, defense of others, defense of property and habitation, self-help in recapturing chattels, the use of force in effecting arrests and executing legal judgments, as well as superior orders.” Fletcher, supra, at 769.

. Although excused, an offense is nonetheless committed. On appeal we must only determine if the evidence supports the conclusion that Moore committed abduction. We are not required to decide whether, Moore, the father of the child, was legally excused from criminal liability and we decline to reach the issue.

. The dissenting opinion is, in part, premised on the perceived "illogical” disproportionality of penalty that would result under our holding. To be sure, a parent, whose conduct falls within Code § 18.2-47 and is punishable as contempt of court in any proceeding then pending, may only be convicted of either a Class 6 felony or a Class 1 misdemeanor. See Code § 18.2 — 47. However, the legislature may enact laws that reflect and advance the public policy it deems important. See Long v. Commonwealth, 23 Va.App. 537, 543, 478 S.E.2d 324, 327 (1996) ("|T]he legislature may ... choos[e] to resolve ... conflicting public policy matters by the enactment of law.”). In this case, the legislative decision to enact a law that supports the orderly resolution of custody disputes by imposing lesser penalties on a party who has elected judicial resolution of the issue, while establishing greater penalties for a party who uses a self-help approach, with its attendant risk of physical and emotional harm to the child and the other parent, cannot be said to defy logic. On appeal, Taylor grounds her claim of derivative defense *66 on Moore’s status as parent, not the circumstances under which they took the child from the custody of the mother.