BENTON, Judge,
with whom ELDER, J., joins, dissenting.
I dissent from the part of the opinion styled Victim’s Hearsay Testimony and the harmless error analysis in the part of the opinion styled Refusal to Allow Martin to Testify.
I.
At trial, the Commonwealth proved by the testimony of several witnesses that in the months prior to the decedent’s death, she told the witnesses she was afraid of what Robert Clay, her husband, would do to her. Relying on Evans-Smith *114 v. Commonwealth, 5 Va.App. 188, 361 S.E.2d 436 (1987), Clay’s attorney objected that the statements were hearsay and immaterial and that the prejudicial effect of the statements outweighed their probative value. In response, the prosecutor argued that the testimony was admissible as “a present sense impression” and to show “motive and premeditation as well as malice.” Citing Compton v. Commonwealth, 219 Va. 716, 250 S.E.2d 749 (1979), the prosecutor also argued that the evidence was admissible to show the “history and relationship” between the Clays. The trial judge ruled that the evidence was admissible.
For the reasons generally stated in the previous panel opinion, see Clay v. Commonwealth, 30 Va.App. 650, 519 S.E.2d 393 (1999), I would hold that the trial judge erred in admitting the decedent’s statements in evidence. “The principal danger [of admitting this evidence] is that the jury will consider [the decedent’s] statements] of fear as somehow reflecting on [Clay’s] state of mind rather than the [decedent’s] — i.e., as a true indication of [Clay’s] intentions, actions, or culpability.” United States v. Brown, 490 F.2d 758, 766 (D.C.Cir.1973). Indeed, it is precisely because of this risk of improper use that the general rule favors excluding this evidence.
A recurring problem arises in connection with the admissibility of accusatory statements made before the act by the victims of homicide. If the statement is merely an expression of fear — i.e., “I am afraid of D” — no hearsay problem is involved, since the statement falls within the hearsay exception for statements of mental or emotional condition. This does not, however, resolve the question of admissibility. The victim’s emotional state must relate to some legitimate issue in the case. For example, the victim’s emotional state may permit the inference of some fact of consequence, such as lack of consent where the prosecution charges that the killing occurred during the commission of either a kidnapping or rape.
However, the most likely inference that jurors may draw from the existence of fear, and often the only logical infer *115 ence that could be drawn, is that some conduct of the defendant, probably mistreatment or threats, occurred to cause the fear. The possibility of overpersuasion, the prejudicial character of the evidence, and the relative weakness and speculative nature of the inference, all argue against admissibility as a matter of relevance. Moreover, even if the judgment is made that evidence of fear standing alone should be admitted, statements of fear are rarely stated pristinely. Instead, that state of mind usually assumes the form either of a statement by the victim that the accused has made threats, from which fear may be inferred, or perhaps more likely a statement of fear because of the defendant’s threats. Not only does the evidence possess the weaknesses suggested above for expressions of fear standing alone, but in addition it seems unlikely that juries can resist using the evidence for forbidden purposes in the presence of specific disclosure of misconduct of the defendant.
In either event, the cases have generally excluded the evidence. While the same pressing need for the evidence may be present as that which led to the development of the hearsay exception for dying declarations, the case for trustworthiness is much weaker, and need alone has never been thought sufficient to support a hearsay exception. Exclusion is not universal, however, for in some circumstances statements may be admissible under other hearsay exceptions, such as that for startled utterances or dying declarations. Moreover, the decedent’s fear may be relevant for other legitimate purposes beyond pro.of of the defendant’s act or state of mind. There is broad agreement that such statements are admissible where the defense claims self-defense, suicide, or accidental death, because in each of those situations the decedent’s fear helps to rebut aspects of the asserted defense.
McCormick on Evidence. § 276, at 243-45 (4th ed. 1992) (emphasis added) (footnotes omitted).
Thus, hearsay evidence of the decedent’s state of mind is not automatically admissible simply because the defense con *116 tends the death was an accident. Although the decedent’s hearsay statements concerning her fear of Clay may fit within an exception to the hearsay rule, they are only admissible if they are relevant to some aspect of Clay’s defense and their prejudicial effect is outweighed by their probative value. The decedent’s statements, which were made months before her death, that she “was moving away” and that “she was afraid of what might happen to her” are irrelevant to whether Clay accidentally shot her while he was handling the gun. Evidence of her state of mind rebutted no aspect of Clay’s defense and, when combined with the evidence that Clay had threatened her, were highly prejudicial. See id.
The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of relevance to a material issue in the case. While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant’s claim of self-defense as justification for the killing. When such a defense is asserted, a defendant’s assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance. Second, where defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for example, defendant’s version of the facts is that the victim picked up defendant’s gun and was accidentally killed while toying with it. In such cases the deceased’s statements of fear as to guns or of defendant himself (showing he would never go near defendant under any circumstances) are relevant in that they tend to rebut this defense. Of course, even in these cases, where the evidence is of a highly prejudicial nature, it has been held *117 that it must be excluded in spite of a significant degree of relevance.
Brown, 490 F.2d at 767 (emphasis added).
Relying on Compton, the Commonwealth argued that the decedent’s state of mind was relevant to prove the history of Clay’s relationship with the decedent. In Compton, the accused claimed he had no reason to kill the decedent because they intended to marry. See 219 Va. at 729, 250 S.E.2d at 757. Noting that testimony, the Court expressly detailed in the following passage, the nexus between the disputed evidence and the theory of accident:
During the trial the defendant referred to the affection which he and the deceased had for each other, their harmonious relationship, and their plans to marry and to build a home when his divorce became final. Love notes and a sentimental greeting card from the victim to the defendant were introduced by him to show their prior relationship and to negate any reason or motive that the defendant would have had to kill the deceased. This evidence was properly admitted as bearing upon the motive and intent of the defendant, and in support of his theory that the killing was accidental. For the same reason it was equally permissible for the Commonwealth to show that the relationship between the parties was not always an affectionate and calm one, but that there were turbulent episodes in which the conduct of the defendant toward the deceased was aggressive and threatening.

Id.

The record in this case contains no evidence establishing a logical nexus between the decedent’s state of mind months prior to her death and Clay’s state of mind when the gun fired. Clay admitted handling the gun when he and the decedent were discussing money that he believed she had taken. Clay, however, did not put at issue his personal relationship with the decedent. If Clay had put at issue the relationship between himself and the decedent, for example, by asserting that they had a loving marriage, the statements *118 might be relevant to rebut that account of their relationship. In the context of the evidence in this case, however, decedent’s statements were irrelevant to any aspect of Clay’s defense. Moreover, a substantial likelihood exists that the jury used the statements to infer that Clay intentionally killed his wife.
Reversing a murder conviction where a decedent’s hearsay report of threats by the defendant was admitted to disprove the defendant’s claim of accidental death, the Supreme Court of California noted that in “cases involving hearsay threats, admissibility has always been approached through a careful examination of the precise issues to which the threat may be relevant.” People v. Lew, 68 Cal.2d 774, 69 Cal.Rptr. 102, 104, 441 P.2d 942, 944 (1968) (en banc). The Lew court examined the evidence and found no nexus between the defendant’s previous threats to the decedent and the defense that the decedent accidentally killed herself while handling a gun in the defendant’s presence. See id. at 103, 441 P.2d at 943. Similarly, the Oregon Court of Appeals rejected testimony of hearsay threats attributable to the defendant by the decedent and noted that “inherent in the hearsay and the [state’s] argument was that the defendant had once purposefully pointed a gun at deceased; therefore, he must have been doing the same thing when she was killed.” State v. Bartolon, 8 Or.App. 538, 495 P.2d 772, 774 (1972). The Bartolón court held that the hearsay threats were inadmissible in the state’s case-in-chief to prove the defendant’s “purposefulness in pointing a firearm at his wife,” where the defense was accidental shooting. Id.; see also Jones v. Commonwealth, 202 Va. 236, 242, 117 S.E.2d 67, 72 (1960) (holding that where the defendant testified his wife grabbed his hand causing the gun to discharge, evidence of hearsay threats reported by the decedent more than one month prior to the shooting was inadmissible).
Relying on Brown, the majority opinion holds that the decedent’s statements of fear that Clay would harm her are “admissible under the state of mind exception to the hearsay rule to show Clay’s motive and intent.” In Brown, however, the court ruled only that “the state of mind exception to the hearsay rule allows the admission of extrajudicial statements *119 to show the state of mind of the declarant at that time if that is at issue in the case.” 490 F.2d at 762 (emphasis added). The Brown court held that state of mind was not at issue in that case and reversed the murder conviction. See id. at 781-82. The Brown decision is consistent with the majority rule elsewhere that although hearsay evidence of a decedent’s fear of a defendant legitimately can be used to prove the decedent’s conduct, it is not relevant or admissible to prove the defendant’s conduct. See State v. Fulminante, 193 Ariz. 485, 975 P.2d 75, 89-90 (1999) (en banc); see also McCormick on Evidence § 276, at 244-45 (in certain cases hearsay can be used to prove declarant’s state of mind or conduct but not the conduct of the accused). The United States Supreme Court has also noted that hearsay statements of belief or fear concerning the defendant which bear close proximity to the issue of guilt or innocence may cause substantial prejudice to the defendant’s case which outweighs any probative value. See Shepard v. United States, 290 U.S. 96, 104, 54 S.Ct. 22, 25-26, 78 L.Ed. 196 (1933); see also Rule 803(3), Fed.R.Evid., advisory committee’s notes (recognizing that Rule 803(3) statement can prove only declarant’s conduct, “not the future conduct of another person”).
At Clay’s trial, no act or conduct of the decedent was at issue. Thus, the decedent’s state of mind had no bearing on any issue to be decided by the jury. The important fact in this case was Clay’s state of mind.
The testimony now questioned faced backward and not forward. This at least it did in its most obvious implications. What is even more important, it spoke to a past act, and, more than that, to an act by some one not the speaker. Other tendency, if it had any, was a filament too fine to be disentangled by a jury.
Shepard, 290 U.S. at 106, 54 S.Ct. at 26 (emphasis added). By ruling that this evidence was admissible, the majority “reverses the effect of the statement so as to reflect on [Clay’s] intent and actions rather than that state of mind of the declarant (victim).” Brown, 490 F.2d at 771. Although the majority opinion extensively cites Brown, a close reading of *120 Brown discloses that it logically cannot be read to support the majority’s analysis. Indeed, it supports the opposite proposition.
Neither Hardy v. Commonwealth, 110 Va. 910, 67 S.E. 522 (1910), nor Hanson v. Commonwealth, 14 Va.App. 173, 416 S.E.2d 14 (1992), supports the majority’s holding that the hearsay statements made by the decedent about her fears are admissible in this prosecution. Indeed, the majority opinion’s quote from Hanson was taken from the following context in Brown:
Quite a number of courts have confronted facts similar to those here involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victims often include previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant. While such statements are admittedly of some value in presenting to the jury a complete picture of all the facts and circumstances surrounding the homicide, it is generally agreed that their admissibility must be determined by a careful balancing of their probative value against their prejudicial effect. Courts have recognized that such statements are fraught with inherent dangers and require the imposition of rigid limitations. The principal danger is that the jury will consider the victim’s statement of fear as somehow reflecting on defendant’s state of mind rather than the victim’s — i.e., as a true indication of defendant’s intentions, actions, or culpability. Such inferences are highly improper and where there is a strong likelihood that they will be drawn by the jury the danger of injurious prejudice is particularly evident.
490 F.2d at 765-66.
I perceive no reason to characterize as dicta our statement of the general rule in Hanson, that to be admissible in a prosecution involving a defense of accidental death, the state of mind of the victim must have been communicated to the *121 accused.[7] See 14 Va.App. at 188, 416 S.E.2d at 23. The reference in Hanson to the Hardy decision was intended to support the proposition that the hearsay declarant’s state of mind only could have been proved to be relevant in that case if it had been conveyed to Hanson and, additionally, would have tended to prove some fact at issue. Indeed, we stated that “[i]n Hanson’s case, Taylor’s state of mind would have had significance only if the fact finder inferred that Taylor acted • upon his state of mind by communicating his dissatisfaction to Hanson and that Hanson responded by killing Taylor.” Hanson, 14 Va.App. at 188, 416 S.E.2d at 23. This is consistent with the following ruling we made in an earlier case:
Out of court statements offered to show the state of mind of the declarant are admissible in Virginia when relevant and material. See, e.g., Compton v. Commonwealth, 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979); Jones v. Commonwealth, 217 Va. 226, 228, 228 S.E.2d 124, 126 (1976); Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 565 (1919). [Under this rule,] ... a statement made by a declarant [might be] admissible for the purpose of showing the proba *122 ble state of mind thereby induced in the hearer, such as being put on notice or having knowledge, or motive, or good faith of the subsequent conduct of the hearer, or anxiety, when relevant and material.
Johnson v. Commonwealth, 2 Va.App. 598, 602, 347 S.E.2d 163, 165 (1986).
For these reasons, I would hold that the trial judge erred in admitting the witnesses’ testimony of the decedent’s hearsay statements. Furthermore, for the reasons stated in Judge Elder’s previous dissent, see Clay, 30 Va.App. at 668-670, 519 S.E.2d at 402 (Elder, J., dissenting), I would also hold that the error was not harmless.
II.
I agree with the majority that the trial judge erred in excluding the testimony of Deputy Martin. I disagree, however, with the majority’s conclusion that this error was harmless beyond a reasonable doubt.
As the majority recognizes, constitutional error is harmless “only when the reviewing court is ‘able to declare a belief that it was harmless beyond a reasonable doubt.’ ” Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en bane) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). In Virginia, a reviewing court can find a non-constitutional error harmless only if it “can conclude, without usurping the jury’s fact finding function, that, had the error not occurred, the verdict would have been the same.” Lavinder, 12 Va.App. at 1005, 407 S.E.2d at 911. For example, where the error involves improperly admitted evidence, the error may, in some cases, be harmless when that evidence is merely cumulative of other, properly admitted evidence. See Freeman v. Commonwealth, 223 Va. 301, 316, 288 S.E.2d 461, 469 (1982). Thus, the Supreme Court has held that “[e]ven though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly estab *123 lished by other competent evidence.” Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979).
The erroneous exclusion of evidence, however, raises different concerns. If the fact sought to be proved by that evidence is established by other, properly admitted evidence, the probative value of or the weight the jury might have given the improperly excluded evidence may be qualitatively more significant than the evidence that was admitted. Thus, we have said that the admission of “[ojther evidence of a disputed fact standing alone, does not establish that an error is harmless.” Hooker v. Commonwealth, 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992). A harmless error analysis is not simply a sufficiency of the evidence analysis. See id. Even if “the other evidence amply supports the jury’s verdicts, [the error is not harmless when] the disputed testimony may well have affected the jury’s decision.” Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).
I would hold that the erroneous exclusion of Deputy Martin’s testimony regarding Clay’s demeanor and willingness to cooperate after the shooting was not harmless error. As Clay proffered at trial, Martin’s testimony was not merely cumulative of Lieutenant Powell’s testimony. As the majority notes, Powell’s testimony established that Clay sought out police to admit shooting his wife and that he was visibly shaken and upset. Powell’s testimony, however, which, including cross-examination, spans only four pages in the transcript, indicates that Powell’s contact with Clay was limited to the time of Clay’s initial arrival at the police station. Clay told Powell he had shot his wife in their home and did not know whether she was still alive. After Clay gave Powell a key to his house, Powell asked the dispatcher to call the rescue squad and “[got] somebody to sit with [Clay] while [Powell] went out to [Clay’s] house.” Powell related no further contact with Clay. Martin’s testimony would have established that Clay remained in Martin’s company for more than “thirty minutes to an hour,” during which time he remained somber, quiet, and cooperative. He did not invoke his right to silence or counsel and gave a lengthy statement regarding the shooting. Clearly, *124 Martin’s testimony would have given the jury a fuller picture of Clay’s demeanor immediately after the incident and was not simply cumulative of Powell’s testimony.
The jury convicted Clay of second degree murder, which required a finding that Clay acted with malice in shooting his wife. Deputy Martin’s testimony concerning appellant’s demeanor and continued cooperation might have lent credibility to Clay’s testimony that the shooting was an accident. Thus, the erroneously excluded evidence might have provided a significant foundation for the jury to find the evidence at most proved the lesser offense of involuntary manslaughter. Although the evidence, including Deputy Martin’s testimony, was sufficient to support a conviction for second degree murder, I do not believe we can conclude beyond a reasonable doubt, without usurping the jury’s fact finding function, that the error of excluding Martin’s testimony did not affect the verdict.
For these reasons, I would reverse the convictions and remand for a new trial.

. Although the majority cites Taylor v. Commonwealth, 31 Va.App. 54, 63 n. 4, 521 S.E.2d 293, 297 n. 4 (1999) (en banc), for the proposition that justification defenses do not include accidental death, the footnote in Taylor merely states that "[cjlaims of justification include” the listed defenses. It does not state that the list is exclusive rather than inclusive. Indeed, Virginia case law suggests it is not an exclusive list.
"Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional, particularly where the facts of the case are not such as would make such law applicable. However, where the defense of excusable homicide by misadventure is relied on, the principles of self-defense may be involved, not for the purpose of establishing defense of self, but for the purpose of determining whether accused was or was not at the time engaged in a lawful act; and it has been held that in such case the right, but not the law, of self-defense is invoked. Accused is entitled to an acquittal where he was lawfully acting in self-defense and the death of his assailant resulted from accident or misadventure, as where in falling he struck or overturned an object and thereby received injuries resulting in his death, or where in a struggle over the possession of a weapon it was accidentally discharged.”
Braxton v. Commonwealth, 195 Va. 275, 278, 77 S.E.2d 840, 841-42 (1953) (quoting Valentine v. Commonwealth, 187 Va. 946, 952, 48 S.E.2d 264, 268 (1948)) (citations omitted).