Present:  Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Compton, S.J.

TOMIKA T. TAYLOR

OPINION BY
SENIOR JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 992996

November 3, 2000

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This criminal appeal involves accomplice liability arising from the alleged abduction by a natural father of his illegitimate child.  The question presented is whether the Court of Appeals of Virginia erred in affirming the trial court's judgment that the evidence was sufficient to convict.

In 1997, defendant Tomika T. Taylor was found guilty in a bench trial in the Circuit Court of Greensville County of abduction in violation of Code § 18.2-47 as a principal in the second degree, Code § 18.2-18.  She was sentenced to eight years' confinement, suspended except for time served prior to sentencing.

On appeal, a panel of the Court of Appeals reversed defendant's conviction, holding the evidence was insufficient to convict.  Taylor v. Commonwealth, 28 Va. App. 498, 507 S.E.2d 89 (1998).  Upon a rehearing en banc, the Court of Appeals, in a 7-2 decision, withdrew the panel opinion and affirmed the trial court's judgment, holding the evidence was sufficient to support

the conviction on the theory of accomplice liability.  Taylor v. Commonwealth, 31 Va. App. 54, 521 S.E.2d 293 (1999). We awarded defendant this appeal.

Employing settled principles of appellate review, we shall recite the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court.  In December 1996, Meshia Powell, age 16, and her ten-month-old son resided in Emporia. The child was the illegitimate son of Avery Moore, formerly of Hampton. The father resided in Decatur, Georgia, with defendant, his "fiance."

On the day of this offense, December 26, there had been no custody or support proceedings involving the child in any court. The father, who was absent at the child's birth, was paying no child support. He had seen the child only once, when the mother took the child to Hampton.

During the early morning hours of the day in question, the father and the defendant were en route from Hampton to Georgia. The couple stopped at the home of the mother's aunt in Southampton County. The father told the aunt, that "he had come to take the baby." He then spoke by telephone with the mother indicating "he had gifts for the baby," and, upon defendant's suggestion, told the mother that the child's grandmother was in the car with the couple.

Upon arrival at the mother's Emporia home, where she lived with her father, the couple "pushed" their way into the house. The child's mother refused the natural father's request to see the child. An argument ensued and the baby fell to the floor from the mother's arms. Defendant and the mother "started fighting."

During the melee, the defendant "passed" the child to his father, ran outside, "and jumped in the car." She called to the child's father to "hurry up, hurry up." The father entered the vehicle with the child and they left with the defendant driving. Shortly, the defendant was found with the child and the father in Atlanta, Georgia, where she was arrested.

At the time of this offense, and before its 1997 amendment, Code § 18.2-47 provided:

> "Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of 'abduction'; but the provisions of this section shall not apply to any law-enforcement officer in the performance of his duty. The terms 'abduction' and 'kidnapping' shall be synonymous in this Code.
>
> Abduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony; provided, however, that such offense, if committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending, shall be a Class 1 misdemeanor in addition to being punishable as contempt of court. Provided further,

3

however, that such offense, if committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending and the person abducted is removed from the Commonwealth by the abducting parent, shall be a Class 6 felony in addition to being punishable as contempt of court."

In this appeal, defendant contends that the Court of Appeals incorrectly affirmed her conviction, arguing that the trial court's finding of guilt was erroneous both factually and legally. Factually, she says, relying on a version of the facts favorable to her, there was no evidence of a designed plan to take the child, only proof that the snatching was done on impulse. Legally, she says, there was no accomplice liability because the father had "legal justification," in the words of the statute, to take the child "and thus could not be guilty . . . of abduction of his own child." We do not agree with defendant.

Initially, the law of accomplice liability should be reviewed. Generally, in the case of every felony, a principal in the second degree may be indicted, tried, convicted, and punished in all respects as if a principal in the first degree. Code § 18.2-18.

A person who is present at the commission of a crime, inciting, encouraging, advising or assisting in the act done, is deemed to be an aider and abettor, and is liable as principal. Snyder v. Commonwealth, 202 Va. 1009, 1015, 121 S.E.2d 452, 457

4

(1961).  However, "before the accessory to a crime can be convicted as such, it must be shown that the crime has been committed by the principal."  Id. at 1017, 121 S.E.2d at 458. But it is unnecessary that the principal should be convicted of the basic offense.  Id.

The question then becomes whether the evidence establishes that the natural father, the alleged principal in the first degree, committed the crime of abduction of his illegitimate son.

The substantive provisions of the abduction statute are clear and unambiguous; they plainly permit prosecution of a father for the abduction of his child.  The statute proscribes the conduct of "[a]ny person."  The only person exempted from that statutory term is "any law-enforcement officer in the performance of his duty."  See Diehl v. Commonwealth, 9 Va. App. 191, 194, 385 S.E.2d 228, 230 (1989).

There is no statutory exception for a parent.  Indeed, the terms of the second paragraph of the statute specifically contemplate, in two places, the offense being "committed by the parent of the person abducted."  This is a clear indication of legislative intent that a child's parent can be guilty of the crime of abducting it.  That has not always been the law of Virginia.  Formerly, parents were exempted from child abduction statutes.  See Code of 1877-78, § 3713; Code of 1919, § 4409.

The next operative terms of the statute require proof that "by force, intimidation or deception" the child was taken, transported, detained or secreted with the intent to deprive the child of his personal liberty or to withhold it from any person lawfully entitled to his charge. The proof in this case clearly meets those requirements.

All of the statutory elements were established. The father, accompanied by defendant, forcibly entered the home where the child resided in the mother's lawful, physical custody. Falsely asserting that a grandmother was waiting in their vehicle outside the home, the father, accompanied by defendant, by intimidation and deception, snatched the child in the midst of a melee from his mother's control, transported him to Georgia with the obvious intent to withhold him from the mother, who was lawfully entitled to his charge.

The final operative terms of the statute require that the forcible seizure be "without legal justification or excuse." As we have stated, counsel for the defendant in this appeal relies solely on the proposition that "Avery Moore had 'lawful [sic] justification' to take his own child and thus could not be guilty under the circumstances of this case of abduction." Therefore, our inquiry will be confined solely to the "legal justification" language of the statute; defendant has not focused here on the word "excuse." Indeed, in this appeal the

6

defendant states that "the point of contention" in this case should not be whether the conduct was "'excused' (as the majority [of the Court of Appeals] chooses to narrowly define that term. . . .)"  After noting defendant argued "that the father's legal justification in taking the child precludes her conviction," 31 Va. App. at 57, 521 S.E.2d at 294, the Court of Appeals decided the case on the "excuse" language and said that "the defense of 'legal excuse,' is personal to Moore and unavailable to [defendant]."  31 Va. App. at 64, 521 S.E.2d at 297.

In order to determine whether the father's conduct was with "legal justification," the nature of his rights regarding his illegitimate child under the circumstances of this case must be examined.  In passing, however, we observe that the father, who did not appear as a witness at defendant's trial, never expressly claimed during this episode that he relied on any legal justification in taking his son from the mother.  Nevertheless, we will assume that such reliance is implicit in his conduct.

At common law, a father and his illegitimate child shared no legal relationship whatever, and the putative father was under no obligation to contribute to the child's support.  Brown v. Brown, 183 Va. 353, 355, 32 S.E.2d 79, 80 (1944).  In modern times, however, the harsh common-law rules on the subject of

parental rights and responsibilities regarding illegitimate children have been modified by statute and case law. Nevertheless, upon birth of an illegitimate child, the right of the natural mother to immediate custody is superior. Commonwealth v. Hayes, 215 Va. 49, 52, 205 S.E.2d 644, 647 (1974).

In discussing the due process rights of "an unmarried father's inchoate relationship with a child whom he has never supported and rarely seen in the two years since her birth," the Supreme Court of the United States draws a "clear distinction between a mere biological relationship and an actual relationship of parental responsibility." Lehr v. Robertson, 463 U.S. 248, 249-50, 258-60 (1983). The Court stated that even though each married parent has some substantive due process right to maintain his or her parental relationship, it does not follow that each unwed parent has any such right. The Court said that, in most cases, parental rights require enduring relationships and do not spring full-blown from the biological connection between parent and child. Id. at 260. Cf. Stanley v. Illinois, 405 U.S. 645 (1972) (Due Process Clause violated by automatic destruction of custodial relationship without giving father of illegitimate child any opportunity to present evidence regarding his fitness as a parent); Va. Code Ann. § 20-124.2 (in determining custody and the best interests of the child, there

shall be no presumption or inference of law in favor of either parent).

In the present case, Avery Moore had only a biological relationship, and none other, with his child.  He was absent at the child's birth, he had not contributed to the child's support, and he had not visited the child, seeing him only once, when the mother brought the child to him.  The child had been in the physical custody of the mother continuously since birth. And, there were no proceedings pending in any court regarding the child's welfare.

Under these circumstances, the father had no sufficient "legal justification," as contemplated by Code § 18.2-47, for his conduct in forcibly taking the child from the mother's custody.  The word "justification" simply means "[a] lawful or sufficient reason for one's acts or omissions;" it sometimes is referred to as the "justification defense" or the "necessity defense."  Black's Law Dictionary 870 (7th ed. 1999). Manifestly, the father's biological relationship did not give him sufficient reason or furnish any necessity for his acts.  He had no actual relationship of parental responsibility. Therefore, we hold that the evidence establishes that the father, the principal in the first degree, committed the crime of abduction of his illegitimate son.

Because the principal in the first degree committed the abduction, we hold the defendant properly was found guilty as a principal in the second degree. She was present at the commission of the crime, she incited, encouraged, advised, and assisted the father in committing the crime, and she is liable as an accomplice.

Consequently, the judgment of the Court of Appeals will be

Affirmed.

JUSTICE HASSELL, concurring.

I join the majority's opinion in its entirety. The majority states that "upon birth of an illegitimate child, the right of the natural mother to immediate custody is superior." I write separately solely to emphasize that the natural mother's superior right to "immediate custody" of her child does not extend to any judicial proceedings that may ensue if the unmarried father seeks custody of the child. See Code § 20-124.2(B).

10