COURT OF APPEALS OF VIRGINIA


Present:  Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


ZACHARIE PIERRE COMEAU
                                      MEMORANDUM OPINION* BY
v.    Record No. 1290-02-2             JUDGE D. ARTHUR KELSEY
                                            JUNE 17, 2003
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                        Gary A. Hicks, Judge

           Robert P. Geary for appellant.

           Amy Hay Schwab, Assistant Attorney General
           (Jerry W. Kilgore, Attorney General, on
           brief), for appellee.


     The trial court found the appellant, Zacharie Pierre Comeau,

guilty of aiding and abetting prescription fraud under Code

§ 18.2-258.1.  On appeal, Comeau contends that the evidence proved

neither that any prescription fraud took place nor that he aided

and abetted any such fraud.  Comeau also contends that the trial

court erred by permitting a pharmacist to testify about a sign-out

log used in the pharamacy.  Finding no error, we affirm the trial

court.

---

     *Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we review the evidence "in the light most favorable to the Commonwealth." Kingsbur v. Commonwealth, 40 Va. App. 307, 308, 579 S.E.2d 357, 358 (2003). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citation omitted).

On December 19, 2001, Comeau accompanied his live-in girlfriend, Betty Ann Nuzzo, to the Westbury Pharmacy to have her prescriptions refilled. Charles Williams, a pharmacy clerk, worked the front counter that day. Nuzzo identified herself and asked Williams for her prescriptions. Williams looked under the "N" section of an alphabetical prescription bin and found a bag for Nuzzo containing three medications: Augmentin, an antibiotic, and Ibuprofen and Feuregon, both pain medications. Feuregon contains codeine, a Schedule II controlled substance as defined in Code § 54.1-3448. Nuzzo signed on a log sheet verifying her receipt of the prescriptions. Nuzzo and Comeau then returned to their home and, as Nuzzo testified, shared the "entire batch of the pills" to get high.

The next day Nuzzo and Comeau returned to the pharmacy and again approached Williams. Nuzzo told Williams she needed to

pick up some prescriptions. Williams checked the "N" section of the prescription bin and found no medications under her name. Williams remembered that Nuzzo and Comeau had picked up prescriptions the day before and asked Nuzzo whether she had already picked up her medications. In Comeau's presence, Nuzzo replied: "Well, no I didn't."[1] Comeau said nothing. Williams called for a pharmacist to come forward and talk with Nuzzo.

Teresa Harris, a pharmacist at Westbury Pharmacy, came to the counter. Nuzzo said she was "looking for seven" prescriptions. Harris, who had not worked the day before, tried to find the pharmacy log sheet. Unable to find it, Harris double-checked the prescription bin to ensure that the prescriptions were not incorrectly filed under the wrong name. Finding no prescriptions for Nuzzo, Harris checked the computer to see if the prescriptions had been filled. The computer records noted that seven prescriptions had been ordered for

---

[1] At another point in his testimony, Williams also said he remembered Nuzzo stating, "them ain't the ones I was looking for." Comeau argues that this refutes Williams's later statement that Nuzzo unequivocally denied receiving any prescriptions the day before. We disagree. At most, Williams's testimony involves some internal inconsistency. The trial court, however, "heard the witnesses testify and was in closer touch with the situation than the appellate court, which is limited to a review of the written record." Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003). As fact finder, the trial court was "free to believe and disbelieve in part or in whole the testimony of any witness." Yellardy v. Commonwealth, 38 Va. App. 19, 22, 561 S.E.2d 739, 741 (2002); see also Montague v. Commonwealth, 40 Va. App. 430, 436, 579 S.E.2d 667, ___ (2003).

Nuzzo and that three prescription labels had been printed the day before. The computer records, however, did not show whether Nuzzo had received these three medications.

Harris attempted to make sense of the situation with Nuzzo. During this encounter, Comeau injected himself into the conversation and became "very mouthy." He attempted to hurry things along by complaining that he was "tired of waiting" and that the whole episode was "ludicrous" and "just ridiculous." Purporting to speak on behalf of Nuzzo as well as himself, Comeau railed, "we shouldn't have to be put through this." "Is this the way business is normally taken care?," Comeau complained. All the while, Harris was attempting —— unsuccessfully —— to find out if Nuzzo had received the Augmentin, Ibuprofen, and Feuregon the day before. At no point did Nuzzo or Comeau truthfully answer this question.

While Harris was looking on the computer, another pharmacist remembered that she had filled the prescriptions for Augmentin, Ibuprofen, and Feuregon the day before. Under pharmacy policy, however, "if a patient says they didn't get it," the pharmacist refills the prescription. Relying on Nuzzo's denial that she received any medications, Harris refilled the prescriptions for Augmentin, Ibuprofen, and Feuregon, along with two of the four other prescriptions in Nuzzo's profile. After reviewing the prescriptions, Nuzzo

- 4 -

refused two of the seven when she learned that that she would have to pay for those two out of pocket.

Comeau and Nuzzo returned home and took all of the codeine-laced pain pills.  In the meantime, Harris found the prescription sign-out log for December 19, proving that Nuzzo had received Augmentin, Ibuprofen, and Feuregon on that day. Harris called Nuzzo and asked her to return those three medications.  Nuzzo and Comeau returned to the store, bringing only the Augmentin.  Comeau was "very belligerent" and "was cussing."  When asked where the Ibuprofen and Feuregon were, Comeau stated, "You know, we took them.  I took them.  I took the Feuregon."  The pharmacy manager called the police while Comeau and Nuzzo "stormed out" of the store.

Officer H.A. Gordon of the Henrico Police responded to the pharmacy's call and went to Nuzzo's house where he interviewed Nuzzo and Comeau.  Comeau admitted that the pharmacy "gave us the same medicine as they did the first day."  He took the position, however, that "it was their fault, not ours."  Nuzzo admitted that she and Comeau immediately "went home" and "took the medicine."  Comeau also admitted that he got "high from it" and that he was "wasted right now."  Nuzzo and Comeau were arrested, charged, and convicted of prescription fraud under Code § 18.2-258.1.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Wright v. Commonwealth, 39 Va. App. 698, 703, 576 S.E.2d 242, 244 (2003) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).

When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc). The same standard applies when a trial judge sits as the fact finder because the "judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict." Cairns v. Commonwealth, 40 Va. App. 271, 293, 579 S.E.2d 340, 351 (2003) (citation omitted); see also Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001).[2]

---

[2] Unless the fact finder acted unreasonably, we consider it our duty not to "substitute our judgment for that of the trier of fact, even were our opinion to differ." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (citation omitted); see also Mohajer v. Commonwealth, 40 Va. App. 312, 321, 579 S.E.2d 359, 364 (2003) (en banc) ("On review of a claim asserting the sufficiency of the evidence, this Court does not substitute its judgment for that of the

- 6 -

In other words, a reviewing court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Instead, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). This deference applies not only to the historical facts themselves, but the inferences from those facts as well. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 783, 407 S.E.2d 301, 306 (1991).

Governed by this standard of review, we find the evidence sufficient to support Comeau's conviction for aiding and abetting prescription fraud. When asked on December 20 whether she had received prescriptions on the 19th, Nuzzo said she had not. In fact, she had. The pharmacist relied on this misrepresentation when she refilled these same prescriptions on the 20th. Nuzzo thereby obtained prescription medications "by fraud, deceit, misrepresentation" or "subterfuge" or by "concealment of a material fact" in violation of Code

---

trier of fact."); Pease, 39 Va. App. at 355, 573 S.E.2d at 278. Thus, on appeal from a bench trial, if "reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge." Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

- 7 -

§ 18.2-258.1(A)(i), (iii). Nuzzo's criminal culpability, therefore, establishes the first predicate for Comeau's liability as a principal in the second degree. See Taylor v. Commonwealth, 260 Va. 683, 688, 537 S.E.2d 592, 594 (2000) (recognizing that "before the accessory to a crime can be convicted as such, it must be shown that the crime has been committed by the principal").

It must also be shown, however, that Comeau was "present at the commission of a crime, inciting, encouraging, advising or assisting in the act" for him to be treated as an aider and abettor. Id. The evidence supports the trial court's finding on this issue as well. Comeau was with Nuzzo, his girlfriend, on the 19th and 20th. Comeau had used the prescriptions obtained on the 19th to get "high," and he also accompanied Nuzzo on the 20th. He stood silently beside Nuzzo when she lied about having not received any prescriptions on the 19th and then injected himself into the conversation, in a belligerent and distracting manner, when the pharmacist attempted to find out the truth. Comeau also said nothing when the pharmacist, based upon Nuzzo's misrepresentation, gave them a second set of pain medications. Comeau and Nuzzo then used the medications to "get high" as soon as they got home.

On appeal, Comeau claims the entire episode was simply a misunderstanding. The trial court, however, construed Comeau's behavior — particularly his effort to distract and intimidate

- 8 -

the pharmacist as she attempted to discover the truth —— as evidence that Comeau "encouraged, countenanced, or approved commission of the crime." Smith v. Commonwealth, 33 Va. App. 65, 70-71, 531 S.E.2d 608, 610 (2000) (quoting Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991)). Because this finding is not irrational, nor the facts underlying it insufficient, we affirm.

B.

Comeau also contends that the trial court erred by permitting Harris, the pharmacist on duty on December 20, to testify about the pharmacy's sign-out log. Doing so, Comeau contends, violates the "shopbook rule" governing admission of business records. We disagree.

The Commonwealth offered the logs as exhibits during Williams's testimony. Comeau initially objected "subject to cross examination." After cross and redirect examination, the trial court asked, "Any further objection to the documents from Mr. Williams?" "No, Your Honor," Comeau's counsel replied, "I don't have any objection." The trial court then admitted the logs into evidence as exhibits.

Later, during Harris's testimony, the Commonwealth gave Harris the logs and asked her to read the entries made for December 19. Comeau objected, claiming the shopbook exception to the hearsay rule did not apply to Harris because she was not a

"custodian" of the logs.  The trial court properly overruled this objection.  The logs had already been admitted, without objection, into evidence.  The requirements of the shopbook exception govern the question whether a business record should be admitted,[3] not whether a knowledgeable witness may testify about the record once it has been admitted.  It matters not, therefore, whether Harris could satisfy the custodian test for establishing the admissibility of the sign-out logs.  They had already been admitted before Harris was asked any questions about them.  Harris's personal knowledge of the logs, based upon her daily use of them, provided the requisite foundation for her testimony.

### III.

Finding that sufficient evidence supports Comeau's conviction and that the trial court properly overruled Comeau's evidentiary objections, we affirm.

<u>Affirmed.</u>

---

[3] The "modern 'shopbook' rule or business records exception to the hearsay rule . . . allows introduction 'into evidence of verified regular [business] entries without requiring proof from the original observers or record keepers.'"  <u>Sparks v. Commonwealth</u>, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997) (bracketed material in original); <u>see</u> <u>also</u> Kent Sinclair, Joseph C. Kearfott, Paul F. Sheridan & Edward J. Imwinkelried, <u>Virginia Evidentiary Foundations</u> § 9.4, at 303 (1998).