COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Alston and Senior Judge Clements
Argued at Richmond, Virginia


JOHNNIE RENARD GILLISON
                                                        MEMORANDUM OPINION[*] BY
v.       Record No. 1910-08-2                        JUDGE LARRY G. ELDER
                                                         OCTOBER 27, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

Cassandra M. Hausrath, Assistant Public Defender (Office of the
Public Defender, on briefs), for appellant.

Joshua M. Didlake, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Johnnie Renard Gillison (appellant) appeals from his bench trial convictions for statutory

burglary and petit larceny. On appeal, he contends the circumstantial evidence was insufficient

to support his convictions. We hold the evidence was insufficient to prove either offense. Thus,

we reverse and dismiss both convictions.

I.

In reviewing the sufficiency of the evidence on appeal, we examine the record in the light

most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly

deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418

(1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be

drawn from proven facts are matters to be determined by the fact finder. Long v.

Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In its role of judging

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

credibility, the fact finder is entitled to disbelieve the self-serving statements of the accused and to conclude that the accused has lied to conceal his guilt. Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc); see also Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001) (noting the fact that the accused lied provided a basis for rejecting the accused's testimony but was not substantive evidence of guilt).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E. 2d 864, 876 (1983); see Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E. 2d 781, 785 (2003) (noting the "statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt"). If the Commonwealth fails to establish any fact necessary to prove an element of the charged offense, the evidence is insufficient as a matter of law to support the conviction. See Powell v. Commonwealth, 31 Va. App. 167, 173, 521 S.E.2d 787, 790 (1999). It is not sufficient that the evidence creates a suspicion or possibility of guilt; the evidence must, instead, exclude every reasonable hypothesis that is consistent with the innocence of the accused. Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970); Sutphin v. Commonwealth, 1 Va. App. 241, 244, 337 S.E.2d 897, 898 (1985).

Appellant was indicted and convicted for the form of statutory burglary requiring proof that he "did feloniously and unlawfully break and enter the building permanently affixed to realty belonging to Anthony Jerome Ambers, with the intent to commit larceny" therein. See Code §§ 18.2-90, -91. He was indicted and convicted for larceny requiring proof of the unlawful

stealing of property belonging to Anthony Jerome Ambers. The trial court convicted him of at least the burglary offense as a principal in the second degree.[1]

A principal in the second degree is one who "consented to the felonious purpose" of the perpetrator and "contributed to [the] execution [of that felonious purpose]." McMorris v. Commonwealth, 276 Va. 500, 505, 666 S.E.2d 348, 350 (2008). "To prove that a defendant is guilty as a principal in the second degree, the Commonwealth must establish that the defendant procured, encouraged, countenanced or approved the criminal act." Brickhouse v. Commonwealth, 276 Va. 682, 686, 668 S.E.2d 160, 162 (2008). "This rule cannot be interpreted to mean that any overt act that is advantageous to the principal's criminal plan is sufficient; *the defendant must also share in the principal's criminal intent*. The overt act must be '*knowingly* in furtherance of the commission of the crime.'" McMorris, 276 Va. at 505, 666 S.E.2d at 351 (emphases added). Thus, it cannot be said that a defendant "procured, encouraged, countenanced, approved or knowingly committed an overt act in furtherance of the [crime] without the knowledge that the crime was occurring." Id. at 506, 666 S.E.2d at 351 (involving the reversal of a conviction for robbery of a wallet and cell phone that occurred while the defendant was attacking the victim, where the evidence permitted the inference that the robbery, committed by another, was an opportunistic crime and failed to prove the defendant shared the criminal intent to rob).

Because the trial court found appellant guilty of burglary as a principal in the second degree and because the only possible principal in the first degree about whom the record contains

---

[1] The record does not make clear whether the trial court convicted appellant of larceny as a principal in the first or the second degree.

any evidence is "Pop,"[2] we examine the sufficiency of the evidence for appellant's conviction as if the trial court considered Pop the actual perpetrator.

Under settled principles,

> The Commonwealth can establish a prima facie case that a [particular person] broke and entered by (1) proving that goods have been stolen from a house into which someone has broken and entered; (2) justifying the inference that both offenses were committed at the same time, by the same person, as part of a criminal enterprise; and (3) proving that these goods were found soon thereafter in the possession of the defendant.

Guynn v. Commonwealth, 220 Va. 478, 480, 259 S.E.2d 822, 823-24 (1979).  Applying these principles in Finney v. Commonwealth, 277 Va. 83, 671 S.E.2d 169 (2009), the Court concluded that the evidence left open a reasonable hypothesis of innocence.  In Finney, Garber, who owned a residence and an adjacent shed, was in the process of moving to a different residence.  Id. at 86, 671 S.E.2d at 171.  When Garber received a telephone call from a neighbor, prompting him to check the property, he had last visited the shed and his adjacent home seven or eight days previously at a time when the shed door and nearby fence were intact.  Id. at 86-87, 671 S.E.2d at 171.  Upon inspection in response to the phone call, Garber found that several boards had been removed from his fence, the doorjamb to the shed "had been 'ripped apart,'" and one of the windows to his garage had been opened.  Id. at 86, 671 S.E.2d at 171.  Missing from the shed and garage were numerous small and large tools and various articles of landscaping equipment that had been in the shed and garage when Garber was last there.  Id.  Garber's neighbor reported that on the previous day, he had seen defendant Finney walk by the neighbor's house "carrying

---

[2] We recognize the identification or conviction of the principal is not a prerequisite to the conviction of appellant as a principal in the second degree, as long as the record proves the occurrence of the underlying offense.  See, e.g., Taylor v. Commonwealth, 260 Va. 683, 688, 537 S.E.2d 592, 594 (2000).

- 4 -

'an arm full of items' . . . includ[ing] an extension cord, a saw, and a drill" and that Finney had offered to sell those items to him. Id. at 86-87, 671 S.E.2d at 171.

Garber and his neighbor remained to watch Garber's property, and later that day, they saw Finney enter Garber's property through the opening in the fence and go into the shed, where he began "'rifling through' the various items still inside the shed." Id. at 87, 671 S.E.2d at 171-72. When Garber and his neighbor approached to confront Finney, Finney fled. Id. at 87, 671 S.E.2d at 172. As he did so, he shouted that he did not steal any of Garber's property but knew who did. Id. Finney later told police that he knew who took Garber's belongings and could get them back and said "he had been on the property looking for a friend named 'Red.'" Id.

Finney was convicted for statutory burglary in violation of Code § 18.2-91, but the Supreme Court reversed on appeal. Id. at 91, 671 S.E.2d at 174. The Court noted that the Commonwealth was required to prove an "ent[ry] in the nighttime or . . . [an] ent[ry] after breaking at any time, day or night." Id. at 88, 671 S.E.2d at 172. Because the Commonwealth did not allege Finney entered the shed in the nighttime and he was seen in the shed only during the daytime, the Court concluded "the issue is whether he committed a breaking in order to enter the shed on the occasion that he was found there or at some other time." Id. It held Finney's presence within the shed did not prove "he [was the person who] forced the door to the shed from its hinges." Id. at 89, 671 S.E.2d at 173. It also held that Finney's possession of the tools he was seen carrying the previous day was not direct evidence that he had entered the shed the previous day or, even if he had, "that he was required to use any physical force to do so." Id. Citing Guynn's three-pronged test for establishing a prima facie case of breaking and entering, the Court held as follows:

> [T]he circumstantial evidence does not justify the inference that
> the breaking of the shed door, the entering of the shed, and the

larceny of Garber's tools in the shed were committed at the same time and by the same person. There is no dispute that the evidence established that Garber had last visited his property seven or eight days prior to July 22, 2006. At that time, the shed door was intact. The breaking of the shed door could have occurred at any time during the seven or eight days that Garber was away from his property. Additionally, Garber testified that he believed it would have taken more than one person to remove all the missing tools. All of these factors combined elicit the reasonable hypothesis that another individual or individuals may have committed the breaking and that Finney subsequently entered the shed without the necessity of a breaking to do so. Accordingly, while the evidence creates a strong suspicion of Finney's guilt, it does not establish beyond a reasonable doubt that he was required to use any physical force to enter Garber's shed and, thus, committed a breaking as required by Code § 18.2-91.

Id. at 90, 671 S.E.2d at 173-74.

The evidence in appellant's case was insufficient to support a finding that appellant himself committed the break-in of Apartment A of Anthony Ambers' triplex, and the Commonwealth does not contend otherwise. We hold the evidence is also insufficient to prove appellant knowingly contributed as a principal in the second degree to a breaking and entering of Apartment A committed by "Pop" or any other person. Appellant was not seen in the house and admitted only to being on the front porch. Moreover, the evidence established only that Pop came out of "the house"—which contained three apartments—and did not prove that Pop came from the burgled apartment.

Even if the evidence permitted the inference that Pop had emerged from the burgled apartment, just like in Finney, the evidence of the broken window and open door may have established that a breaking had occurred but failed to establish that Pop was the perpetrator or that appellant participated in the breaking. Victim Ambers, like the victim in Finney, had been away from the property for seven or eight days, and could not establish when the breaking occurred. The record does not permit a finding that the breaking must have occurred the same day that Ambers received a call from a female tenant "alert[ing] him that something might ha[ve]

- 6 -

happened." It is true that the area where the break-in occurred was less secluded than in Finney. Here, the two adjacent apartments in the same building were occupied contemporaneously with the break-in. In Finney, by contrast, the break-in involved the shed and garage of a temporarily unoccupied single-family dwelling. However, the evidence of the extent of the damage to Ambers' triplex was less severe than in Finney, permitting the inference that the tenant who called Ambers may or may not have detected the break-in immediately after it occurred.

The record contains no description of what the female tenant saw to cause her to "alert [Ambers] that something might have happened." Ambers testified that when he arrived at the burgled apartment, he noticed the door was "ajar" and that one of the windowpanes, which had been intact the week before, had "a little crack in the window where the lock is," but that the window remained latched. Ambers described no damage to the door, stating merely that it was "ajar" and not stating how widely "ajar" it was. Further, a photograph of the "little crack" in the window, where the lock was, indicated that the window contained an upper and lower sash and that the "little crack" was in only one of twenty-five individually segmented small glass panes that comprised the upper window sash. In addition, the window remained closed and latched. Here, as in Finney, "these factors combined elicit the reasonable hypothesis that another individual or individuals may have committed the breaking [at an earlier time] and that [Pop]," assuming the evidence supported a finding that he entered the burgled apartment, "entered the [apartment] without the necessity of a breaking to do so." Id.

Finally, even if the evidence supported a finding that Pop entered the burgled apartment and committed a breaking in order to do so, nothing in the record proves that appellant shared Pop's intent in committing that burglary. The fact that appellant helped Pop, whom he was aware was a known burglar, carry the bags from the porch of the burgled triplex "around the corner" to sell to "Junnie," whom he knew was Pop's "fence," does not prove appellant shared

Pop's criminal intent in entering the burgled apartment. In Virginia, only larceny, not burglary, has been held to be a continuing offense. See Moehring v. Commonwealth, 223 Va. 564, 568, 290 S.E.2d 891, 892 (1982); see also United States v. Hull, 456 F.3d 133, 146 n.7 (3d Cir. 2006) (noting "courts differ as to whether burglary is a continuing offense"). Although these circumstances are highly suspicious, they do not eliminate the reasonable hypothesis that appellant encountered Pop only after the breaking and entering had been completed by Pop or some other person and, thus, that appellant did not share Pop's criminal intent in committing the burglary offense. Thus, the evidence is insufficient to support appellant's conviction for burglary.

The evidence, viewed in the light most favorable to the Commonwealth, also is insufficient to support appellant's conviction for larceny. "Larceny is the taking and carrying away of the goods and chattels of another with intent to deprive the owner of the possession thereof permanently." Lund v. Commonwealth, 217 Va. 688, 691, 232 S.E.2d 745, 748 (1977). "[P]roof of possession of recently stolen goods establishes a prima facie case that the defendant received them with guilty knowledge" and shifts to the defendant "the burden . . . to go forward with evidence in explanation." Covil v. Commonwealth, 268 Va. 692, 695, 604 S.E.2d 79, 81 (2004). "Because larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." Moehring, 223 Va. at 568, 290 S.E.2d at 892.

Here, the circumstances, although highly suspicious, fail to prove that the items appellant helped Pop carry from the triplex were the items belonging to Ambers that were stolen from Apartment A. As discussed above, Ambers had not been to the burgled apartment in seven or eight days, and the evidence failed to establish when during that time period the breaking had occurred. Ambers testified that the damage to the window was "a little crack . . . where the lock

is" but that the window remained latched, and he identified no damage to the door, which he described merely as being "ajar" when he arrived several hours after appellant had been present on the porch. Appellant wrote in his statement merely that, when he agreed to help Pop move the bags that were already on the porch, Pop had come from "the house" with a box. No evidence established that Pop came from the burgled apartment rather than one of the two occupied apartments or that Pop did not own or have permission from the owner to possess or sell the items in the bags. The evidence further fails to prove that the items in the bag were tools. Detective Foultz testified appellant "didn't make mention of" "what the stuff was that he was moving." The Commonwealth argues the record established that appellant "was familiar with what [Detective Foultz] was talking about" when the detective "went to investigate a burglary of these items," the tools, but the record fails to indicate whether appellant "was familiar with" what the detective was talking about because the detective mentioned the tools or because, as the detective admitted, he "specifically mention[ed]" "the house, the location, the address." Thus, although the evidence is highly suspicious, a reasonable inference remains that the bags contained something other than Ambers' missing tools from Apartment A. Because a reasonable hypothesis of innocence remains, the evidence was insufficient to support appellant's conviction.

## II.

For these reasons, we hold the evidence was insufficient to support appellant's convictions for statutory burglary and petit larceny. Thus, we reverse and dismiss both convictions.

<u>Reversed and dismissed.</u>