UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Petty and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


JONATHAN KEYES

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0671-13-1                 JUDGE RUDOLPH BUMGARDNER, III
                                                        JULY 8, 2014
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                                    Bruce H. Kushner, Judge

                   M. Colston Jones, Assistant Public Defender, for appellant.

                   Robert H. Anderson, III, Senior Assistant Attorney General
                   (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


        Jonathan Keyes appeals his conviction of abduction, Code § 18.2-47.  He maintains the

evidence presented was insufficient to prove a detention or the intention to deprive the victim of

her personal liberty.  He also asserts that he acted with legal justification when he refused the

police entry into his home.  Concluding the trial court did not err, we affirm.

        The defendant was living with Mari-Carroll Wolfe in a small townhouse in Chesapeake.

Wolfe had broken her ankle in a car wreck and wore a non-weight bearing boot.  She used a

walker or crutches and could not to climb their stairs without assistance.  Even with the

defendant's help, it took twenty-five minutes to get up a flight of stairs.

        On the day of the incident, the defendant had been drinking.  He returned to the townhouse

in the evening, went back outside, and returned with a six-pack of beer.  The defendant and

Wolfe were "hanging out [outside] for a little while."  When they started to go back inside, the

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

defendant threw Wolfe's walker "inside of the residence so that I couldn't get in the door." Eventually he brought it back, and she was able to get back inside. The defendant went to a neighbor's house. Wolfe decided not to wait up for him, crawled upstairs on her hands and knees, and got into bed.

When the defendant returned, he asked, "Where's my beer?" Wolfe told him that she did not have it, and the defendant left again. He returned and told her that he just hit a neighbor. The defendant took Wolfe's cell phone, which she needed because she could not stand up and she did not have a home phone. When Wolfe tried to get her cell phone back, the defendant struck her across the face. She fell to her hands and knees, and he kicked her three times.

The defendant left. Wolfe yelled for him to return her phone and began to yell to the neighbors for help. The defendant returned and threw the phone on the ground, but it no longer worked. A few minutes later, he went upstairs and stood between Wolfe and the door to the bedroom. He told her, "The police are here. Don't answer the door. We didn't call them." The defendant blocked her way to the bedroom door and told her that neither one of them was going to let the police inside.

Police responded to a "domestic assault in progress" complaint. When Officer Casey Hills knocked on the door, the defendant responded, "You can't come in. If you come through that door, I'm going to shoot you . . . in the face." He told the police that he had a gun and they had "better not come inside" or he would shoot them. While a second officer talked to Keyes trying to pacify him, Officer Hills saw Wolfe appear at the window almost directly above the door. She said that she was up there and had been involved in the incident. As Wolfe began to talk with Officer Hills, the defendant "was either on the stairs at all times where I [Wolfe] was not able to get by or standing directly between me and the door to . . . my bedroom."

As a safety measure and so he could see into the bedroom, Officer Hills backed away from the townhouse. He explained the defendant "repeatedly came into the room where she was and into [the officer's] view. . . . He would make statements, yell at us." At certain points, the defendant "was right there on top of her." The defendant repeatedly moved between the front door and the bedroom. When the defendant went into the bathroom, Wolfe "popped the screen out of the window frame and passed [the police] a key to the front door." At one point, Officer Hills told Wolfe to secure herself in the bedroom, but she replied that she "wasn't able to."

The police talked with Wolfe through the bedroom window and asked her if she could get out of the house. She said that she did not know, but would try. Wolfe crawled to the top of the stairs planning to slide down the stairs on her bottom. The defendant was sitting on a step with his back against the wall with his legs across the step blocking the stairway. He refused to move so Wolfe could get past him. Wolfe crawled back to the bedroom and told the police that she could not get out of the townhouse. The defendant also placed Wolfe's crutches against the front door and back door in such a way as to "barricade" the townhouse against any entry by the police officers.

Approximately ninety minutes later, Wolfe told police that she would try to go downstairs again. Wolfe then told the defendant that she was going down the stairs, and, this time, she was able to make her way down the stairs without interference and go out the front door. The trial court found the defendant guilty of abduction. The defendant filed a motion to set aside the verdict, which the trial court denied. This appeal followed.

The defendant argues that the evidence was insufficient to prove either a detention or the intent to deprive the victim of her personal liberty. "When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'"

Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting

Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).

Code § 18.2-47(A) states:

> Any person who, by force, intimidation or deception, and without legal justification or excuse, . . . detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of "abduction."

"To prove that the defendant intended to deprive the victim of her personal liberty, the Commonwealth must prove that the defendant intended to deny the victim her freedom from bodily restraint." Burton v. Commonwealth, 281 Va. 622, 627, 708 S.E.2d 892, 894 (2011). "'Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (quoting Wright v. Commonwealth, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993), vacated and remanded on other grounds, 512 U.S. 1217, aff'd on remand, 248 Va. 485, 450 S.E.2d 361 (1994)). "[W]hether the required intent exists is generally a question for the trier of fact." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "A trial judge's factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citation omitted).

The defendant hit a neighbor, and then returned inside where he struck and kicked Wolfe. He took her phone, which was her only means of communication. She called for help out the window. When the police responded to a complaint of a domestic assault in progress, the defendant told Wolfe not to allow the police inside. The defendant told the police that they could not come in or he would shoot them. The defendant repeatedly told police that he had a weapon. He barricaded the doors with Wolfe's crutches so the police could not enter.

Taken as a whole, the defendant's actions and statements prove that he had the intent to, and did, detain Wolfe. She was not able to leave the house when she wanted to do so. He slapped and kicked her, took her phone, blocked her way, and would not let the police in the house. For an hour and a half, the police were unable to get the defendant to allow Wolfe out of the apartment. Indeed, the defendant's brief states the defendant "sat on the stairway, which prevented Wolfe . . . from going downstairs."

The defendant prevented Wolfe from leaving the house by standing between her and the door to her bedroom and blocking her attempt to go down the stairs. Wolfe could not walk and could only move about the townhouse by crawling. The trial court found that Wolfe "was physically limited in her ability to extricate herself from the circumstances, but the combination of behavior of [the defendant] was the ultimate force that deprived her of her liberty." The trial court did not err in holding that the defendant detained Wolfe and intended to deprive her of her physical liberty. As in Commonwealth v. Herring, __ Va. __, __, 758 S.E.2d 225, __ (2014), "it is possible to 'detain' a victim by having the victim remain within a house."

The defendant asserts the he was legally justified in lawfully refusing entry to the police because they did not have a search warrant or arrest warrant. As he concedes on brief, justification is an affirmative defense and the burden was on him to present sufficient evidence to create a reasonable doubt.

The defendant testified that a police officer knocked on his door and threatened to kick the door in if the defendant did not open it. The defendant asked the officer if he had an arrest warrant or search warrant, and the officer said no. The defendant testified that he put one of Wolfe's crutches under the door to prevent the officer from kicking in the door. The defendant explained that he had been drinking and did not want to let the police in his home. He denied striking Wolfe

and denied having a weapon. He explained that he simply did not open the door because he did not want to be arrested for drunk in public.

"The word 'justification' simply means '[a] lawful or sufficient reason for one's acts or omissions;' it sometimes is referred to as the 'justification defense' or the 'necessity defense.'" Taylor v. Commonwealth, 260 Va. 683, 690, 537 S.E.2d 592, 596 (2000) (quoting Black's Law Dictionary 870 (7th ed. 1999)). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (citation omitted). The trial court had an opportunity to see and hear the witnesses. It found the police and victim's versions of the events to be more credible than the defendant's version.

The Commonwealth's evidence showed that the police had come to investigate a domestic assault. Prior to the police's arrival, the defendant hit a neighbor and then hit and kicked Wolfe. Once the police arrived, the defendant refused to cooperate, and the situation escalated. He threatened to shoot the police and repeatedly threatened that he had a gun. The police officer spoke with Wolfe, and she said that she could not leave. The defendant sat on the stairs, blocking Wolfe's way to the front door.

The defendant threatened the police and prevented the defendant from leaving the house. Whatever reason the defendant may have had to keep the police outside, it could not justify his keeping the victim inside. The defendant was not justified in his actions. The evidence supports the findings that the defendant was guilty beyond a reasonable doubt of abduction and that he acted without legal justification. Accordingly, we affirm.

<u>Affirmed.</u>