COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Frucci

COREY EVERETT

v.      Record No. 1821-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 17, 2026

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Brooke I. Hettig, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the trial court convicted Corey Everett of abduction by force or

intimidation, in violation of Code § 18.2-47. On appeal, Everett challenges the sufficiency of the

evidence to sustain his conviction.[2]

BACKGROUND[3]

Early in the morning of September 30, 2023, Everett's girlfriend, Keneesha Johnson, was

visiting Everett at his apartment. Johnson was asleep in Everett's bed when Everett hit her in the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

[3] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

back of the head with a gun. Her head began bleeding. Johnson got out of bed, put on her shoes, and went straight to the living room to leave the apartment. She testified that she tried to unlock the door and "was fumbling with it" when Everett "hit my hands away from the doorknob." Johnson recalled that she told Everett, "I want to leave. I don't want to be here anymore." She further recalled that Everett said, "This is my door. Don't touch my door." Johnson then sat on the couch, and Everett sat in a chair by the door. Johnson again attempted to leave, making a "beeline for the door, to try to get out." Again, Everett moved in front of the door and prevented her from leaving. It was only after Johnson called the police that Everett finally relented his efforts and let her leave the apartment.

Officer Kevin P. Bingman of the Newport News Police Department went to Everett's apartment in response to Johnson's call. When Officer Bingman arrived, other officers were already there, and Johnson "was standing outside." Officer Bingman testified that he observed "a spot in her hair that looked wet" and recalled that "her voice sounded shaken." Officer Bingman entered the apartment through the unlocked back door. Officer Bingman found a handgun in the bedroom.

Meanwhile, another officer, Officer Everage, detained Everett. Officer Everage advised Everett of his rights and questioned him. Without being asked, Everett stated, "I do have a firearm in the house." When Officer Everage asked Everett how Johnson's head was injured, Everett responded, "I have no idea."

At Everett's bench trial, Johnson testified that on the night of the incident, she felt "[o]verwhelmed, because it all started with being hit with a gun." She could not recall certain details of the incident, but she denied drinking any alcohol that day.

Officer Bingman testified at trial, describing Johnson's demeanor as "looking downward. She was kind of offput." Officer Bingman stated that he was standing an "[a]rm's length out" from Johnson and did not smell alcohol on her.

At the close of the Commonwealth's evidence, counsel for Everett moved to strike the evidence, arguing that there was no evidence that showed that Everett had the specific intent "to permanently deprive" Johnson of her personal liberty. The Commonwealth responded, stating that Everett had misstated the intent for abduction, as the statute requires only an "intent to deprive that person of personal liberty" with "no requirement on how long that must last." The trial court denied Everett's motion, holding that "the Commonwealth has met its burden."

Everett testified in his own defense. He testified that Johnson was intoxicated that night. According to Everett, they were arguing when Johnson "lunged towards me" and then "started swinging on me." Everett testified that Johnson struck him "[a]t least four times." He stated, "That's when I had grabbed the firearm, and I had struck her with it one time." He testified that he never intended to keep her in the apartment against her will. He stated that he did not want Johnson to leave because she was intoxicated and he "didn't think that was safe." He insisted that he never did anything to prevent her from leaving the apartment. Everett also denied telling the police that he did not know how Johnson's head was injured. In response, the prosecution introduced Officer Everage's body camera footage as impeachment evidence.

In his closing argument, counsel for Everett argued that he lacked the intent to deprive Johnson of her personal freedom "because he thought that she was intoxicated" and he "didn't want her to leave in that condition." He argued that Johnson could not recall certain details of the incident and that her memory loss "may be consistent with someone who ha[d] been drinking." The trial court rejected Everett's argument, stating that Officer Bingman was trained to look for indicators of intoxication, and did not "observe any indicators of any intoxication about

Ms. Johnson." The trial court judge noted that the lapses in Johnson's memory could have been caused by intoxication, but that her memory loss could also be explained by "being pistol-whipped in the head." The trial court judge indicated that he had "questions about credibility . . . up until I saw the video" from Officer Everage's body worn camera. After viewing that footage, the trial court found that the statements that Everett made to Officer Everage were inconsistent with and contradictory to the statements he made from the witness stand. The trial court judge stated, "I think the evidence is sufficient, so I'm going to find that he's guilty as charged at this point." Everett was sentenced to 10 years of incarceration, with 7 years and 6 months suspended.

## ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

On appeal, Everett asserts, as he did below, that there was no proof that he had the specific intent "to permanently deprive" Johnson of her personal liberty. He again argues that he did not want her to leave because he thought she was intoxicated. He claims that "[t]here's been no refuting of that."

"Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, *detains* or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Code § 18.2-47(A) (emphasis added). When a defendant has kept the victim in a specific place "through the use of force, intimidation, or deception," a detention has occurred. *Brown v. Commonwealth*, 74 Va. App. 721, 731 (2022) (quoting *Commonwealth v. Herring*, 288 Va. 59, 74 (2014)). "A defendant intimidates a victim if he 'puts the victim in fear of bodily harm by exercising such domination and control as to overbear her will.'" *Id.* at 731 (alterations in original omitted) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 663 (1985)). Intimidation may occur where the defendant imposes "psychological pressure on the victim who, under the circumstances, is vulnerable and susceptible to such pressure." *Id.* at 732 (alteration in original omitted). There is no temporal requirement for abduction. *Id.* at 732-33. An abduction may occur when the victim's personal liberty is restrained "even if only for the briefest of moments." *Id.* at 733.

"To prove that the defendant intended to deprive the victim of her personal liberty, the Commonwealth must prove that the defendant intended to deny the victim her freedom from bodily restraint." *Burton v. Commonwealth*, 281 Va. 622, 627 (2011). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Id.* at 626-27. A defendant's state of mind "may be shown by his acts and conduct." *Id.* at 627.

Everett hit Johnson in the back of the head with a gun while she was asleep. Following the unprovoked assault, Johnson told Everett she wanted to leave, but when she tried to do so, he hit her hands away from the door and told her not to touch it. Everett then sat in a chair near the door. When Johnson attempted to leave again, Everett stepped in front of the door, blocking her from exiting. Johnson testified that she felt "overwhelmed" by Everett's actions. From the totality of these circumstances, a rational trier of fact could certainly conclude that Everett overbore Johnson's will, "even if impermanently." *Brown*, 74 Va. App. at 731, 733.

Whether Everett had the required intent was "a question for the trier of fact." *Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024). Both Johnson's and Officer Bingman's testimony supported the inference that Johnson was not intoxicated.[4] The trial court rejected Everett's version of events, finding his statements at the scene to contradict his trial testimony. "The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (emphasis in original) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Therefore, we certainly cannot say that no rational factfinder could have found that Everett intended to deprive Johnson of her personal liberty.

---

[4] Even if Johnson was intoxicated, that would not provide a legal justification negating Everett's intent in these circumstances. *See Taylor v. Commonwealth*, 260 Va. 683, 690 (2000) ("The word 'justification' simply means '[a] lawful or sufficient reason for one's acts or omissions." (alteration in original)).

## CONCLUSION

For the foregoing reasons, we do not disturb the judgment of the trial court.

*Affirmed.*