COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Raphael, Lorish and Callins


CODI SHAWN DUNBAR

v.      Record No. 1107-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 20, 2023


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

(James D. Fairchild; The Law Office of Fairchild & Yoder, PLLC),
for appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Rosemary V. Bourne, Senior
Assistant Attorney General, on brief), for appellee.


Codi Shawn Dunbar challenges the sufficiency of the evidence supporting his convictions

for first-degree murder, in violation of Code § 18.2-32, and use of a firearm in the commission of

a felony, in violation of Code § 18.2-53.1. After examining the briefs and record, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Finding that sufficient evidence supports

Dunbar's convictions, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

standard requires us to "discard the evidence of the accused in conflict with that of the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Around November 24, 2019, Dunbar, his friend Tristin Landreth, and their girlfriends were at Dunbar's residence in Campbell County, celebrating Landreth's birthday. Over the course of the weekend, Dunbar and Landreth consumed alcohol, methamphetamine, and acid. They also went hunting and target shooting. Landreth had brought two rifles and a crossbow to Dunbar's house that weekend. According to Landreth's testimony, on November 24, 2019, he and Dunbar discovered that methamphetamine "that was supposed to be at [Dunbar's] house . . . just came up missing." Later that day, Landreth invited their friend, Christopher Tench, to join them "because [they] didn't have [any more] dope and [they] knew that [Tench] did." When asked if he told Dunbar that he had called Tench, Landreth testified that he did not need to tell Dunbar because Dunbar was "there" when he called Tench, at Dunbar's request.

Dunbar and his teenage cousin then went hunting on a deer stand on Dunbar's property, using Landreth's 30-06 rifle. When Tench arrived, Landreth shook his hand and greeted him. As they walked towards Landreth's truck, a "shot went off." Landreth heard "gargling" and saw Tench fall to the ground. Tench had been shot in the head. Landreth believed that Tench was dead, so he ran into the house to tell the women to hide. He then went back outside and saw Tench "trying to pick [himself] up" and get help. He also saw Dunbar "coming through the field from a horse barn" carrying Landreth's 30-06 rifle. Landreth testified that "not even minutes" had passed since the first shot and that Dunbar, upon reaching the truck, put the 30-06 rifle in the truck, retrieved Landreth's .22 rifle, and shot Tench in the head with the .22 rifle.

Landreth then went inside in "shock," smoked a small amount of methamphetamine that was sitting on a table, and watched Dunbar go in and out of the house collecting cleaning supplies. Landreth testified that he had no idea how much time passed while he was sitting at the table. At some point, Dunbar directed Landreth to "take the girls and . . . meet [Dunbar] at McDonald's." When Landreth went outside, Tench's body and the truck were gone. Landreth took the women to McDonald's as instructed. After leaving McDonald's, Landreth and the women met Dunbar at a carwash, and they all went back to Dunbar's house together. Landreth and his girlfriend left, against Dunbar's wishes, "as soon as [they] got the chance." After leaving, Landreth immediately reported the events to his father and then to the police.

In response to Landreth's statement, Campbell County Sheriff's Deputy Sergeant Rea went to Dunbar's residence to do a welfare check on Tench. Dunbar told Sergeant Rea that Tench was not there and that he had never been on the property before. Sergeant Rea testified that Dunbar appeared nervous. On the driveway, Sergeant Rea saw what appeared to be blood partially covered with wood shavings. Dunbar told Sergeant Rea that the blood was from a deer he had hunted and that he covered it to keep his dogs from "getting into the blood." However, Sergeant Rea noticed that Dunbar's dogs were eating a deer carcass on the side of the residence. Police officers ultimately recovered Landreth's .22 rifle under a mattress at Dunbar's residence and recovered Landreth's 30-06 rifle from Landreth's father's house.

The next day, Campbell County Sheriff's Major Emmerson spoke with Dunbar. Dunbar reported that he had been hunting the previous day and as he returned, he saw Landreth shoot Tench at close range with the 30-06 rifle. Dunbar initially denied knowing anything about the disposal of Tench's body, but later said that he helped Landreth wrap Tench's body in a blanket, move it in Landreth's truck, and dump it in a pond in Pittsylvania County. The police found Tench's body near the bank of the pond Dunbar identified.

Through subsequent police interviews, Dunbar's recitation of the events changed. He eventually told police officers that $400 worth of methamphetamine had "gone missing" before the shooting, and Dunbar suspected that Tench had stolen the drugs. Dunbar also told investigators that he accidentally shot Tench with the 30-06 rifle, admitting that he stood by the horse barn and pointed it at Tench. However, he claimed that he did not pull the trigger and instead the gun went off accidentally. Investigating that statement, officers found three cartridge casings by the horse barn. Dunbar maintained that Landreth fired the fatal shot from the .22 rifle. He also told the police that his DNA would be on both guns, but that Landreth "forced him" to clean the .22 rifle. Dunbar also eventually told police officers that he was alone when he moved Tench's body in a Mitsubishi Eclipse and deposited it in the pond.

A firearms expert examined the two guns that were seized in this case. She did not detect any abnormalities in the guns or the triggers, and she concluded that the cartridge casings found near the barn were fired from the 30-06 rifle. Melissa Hypes, a DNA expert, analyzed blood found on the guns. She found blood on the scope of the .22 rifle that belonged to Tench. Although she found DNA samples on other parts of the firearm, she could not match the other DNA samples to any individual, in part because those samples contained multiple mixtures of DNA. Dunbar was eliminated as a contributor to the identifiable DNA on those other parts of the .22 rifle, but nobody could be eliminated or included from the DNA mixtures on the firearm.

Katie Adolph of the Virginia Department of Forensic Science also testified for the Commonwealth. Adolph processed the .22 rifle and the 30-06 rifle; she did not find fingerprints on either gun. As an expert in fingerprint analysis, she testified that different factors influence whether a fingerprint is left on a surface and that someone may touch a surface without leaving a fingerprint behind. She also noted that even if a fingerprint is left behind, fingerprints are very fragile and easily wiped away.

Various other items of physical evidence corroborated the testimony from Landreth and the investigators. Police officers found blood on Dunbar's property, and the Mitsubishi appeared to have been "wiped down" and smelled strongly of bleach. The carpet in the car's trunk had been cut out and removed. Additionally, the medical examiner testified that Tench suffered two gunshot wounds to his head and that either wound would have been fatal.

In his motions to strike, Dunbar argued that the Commonwealth failed "to prove premeditation" and thus both charges must be struck. The trial court denied the motions to strike, and the jury found Dunbar guilty of first-degree murder and use of a firearm during the commission of a felony. Dunbar appeals.

## ANALYSIS

Dunbar argues that the evidence failed to prove premeditation, that he acted with malice, or that he used a firearm in the commission of a premeditated murder. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### I. Malice

Dunbar claims that the evidence failed to prove he acted with malice, but he failed to make this argument at trial. "No ruling of the trial court . . . will be considered as a basis for

reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Dunbar did not argue to the trial court that the evidence failed to prove he acted with malice. Instead, he argued only that the Commonwealth did not prove the killing was premeditated. Nor does he invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Thus, Dunbar failed to preserve this argument for appellate review and we do not address it.

## II. Premeditation

Code § 18.2-32 provides that "[m]urder . . . by . . . willful, deliberate, and premeditated killing . . . is murder of the first degree . . . ." "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first[-degree] and second degree murder. The intent to kill must come into existence at some time before the killing; it need not exist for any particular length of time." *Avent v. Commonwealth*, 279 Va. 175, 208 (2010) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). "[E]vidence showing that the premeditation was only slight or momentary is sufficient to sustain the conviction. This is so because '[p]remeditation is an intent to kill that needs to exist only for a moment.'" *Jackson v. Commonwealth*, 267 Va. 178, 204 (2004) (quoting *Green v. Commonwealth*, 266 Va. 81, 104

(2003)).  In determining whether premeditation existed, "the jury may properly consider the brutality of the attack, . . . whether more than one blow was struck, . . . and the defendant's lack of remorse and efforts to avoid detection."  *Avent*, 279 Va. at 208 (quoting *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982)).  Circumstances commonly associated with first-degree murder include shooting the victim "at close, and thus predictably fatal, range," *Jackson v. Virginia*, 443 U.S. 307, 325 (1979), firing a weapon more than once, *Chandler v. Commonwealth*, 249 Va. 270, 280 (1995), and the "deliberate use of a deadly weapon," *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994).

"[I]ntent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts."  *Secret v. Commonwealth*, 296 Va. 204, 229 (2018) (quoting *Viney v. Commonwealth*, 269 Va. 296, 301 (2005)).  Furthermore, "[i]t is permissible for the [jury] to infer that every person intends the natural, probable consequences of his or her actions."  *Id.* (first alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018)).  "Premeditation is a factual question, reserved for determination by the [jury]."  *Martinez v. Commonwealth*, 42 Va. App. 9, 22 (2003).  "When the sufficiency of the evidence to prove premeditation is challenged on appeal, 'it is our duty to look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong.'"  *Id.* (quoting *Snyder v. Commonwealth*, 202 Va. 1009, 1016 (1961)).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify."  *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)).  "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong."  *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).  Dunbar does not argue that

Landreth's testimony was inherently incredible, and the jury was entitled to find that Landreth's testimony was credible. Based on Landreth's testimony and the corroborating evidence, the jury was not plainly wrong in finding that Dunbar deliberately shot and killed Tench.

Dunbar told the police that he suspected Tench of stealing a substantial amount of drugs from him, suggesting a motive for killing Tench. He also admitted to the police that as he stood by the barn, he purposefully pointed the 30-06 rifle towards Tench. The firearms expert testified that there was nothing abnormal about the gun's trigger, and the jury was entitled to reject Dunbar's claim that the gun fired by accident.

Landreth testified that he saw Dunbar shoot Tench in the head, at close range, with the .22 rifle. The scope of the rifle had Tench's blood on it, consistent with a close-range shot. Additionally, the .22 rifle was found under a mattress at Dunbar's house. While Landreth immediately reported his version of the events to the police, Dunbar was nervous when he first spoke to the police, and he continually changed his recitation of the events, eventually admitting to the first shot and admitting that he alone moved Tench's body. Dunbar's Mitsubishi appeared to have been "wiped down" and smelled like bleach, consistent with his own admissions and with Landreth's testimony. Although Dunbar's fingerprints and DNA were not found on the .22 rifle, that does not prove that Dunbar did not use the firearm.

Dunbar claims he could not have premeditated Tench's murder because Landreth did not tell Dunbar that he invited Tench to the property. But Landreth did not specifically tell Dunbar that he invited Tench because Landreth called and invited Tench in front of Dunbar, thus Dunbar knew that Tench was coming to the property. Moreover, "[p]remeditation is an intent to kill that needs to exist only for a moment." *Jackson*, 267 Va. at 204 (alteration in original) (quoting *Green*, 266 Va. at 104). In determining whether premeditation existed, "the jury may properly consider the brutality of the attack, . . . whether more than one blow was struck, . . . and the

defendant's lack of remorse and efforts to avoid detection." *Avent*, 279 Va. at 208 (quoting *Epperly*, 224 Va. at 232). Here, the evidence showed that Dunbar shot Tench twice, once at close range, then attempted to hide the body and shift the blame to someone else. *See Jackson*, 443 U.S. at 325 (shooting a person at close range indicates premeditation); *Avent*, 279 Va. at 208 (the jury may consider the defendant's efforts to avoid detection in considering whether premeditation existed).

After considering all the evidence, a reasonable jury could infer that Dunbar intentionally and deliberately fatally shot Tench. Thus, the Commonwealth met its burden, and the evidence was sufficient to support Dunbar's convictions.

CONCLUSION

The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Dunbar was guilty of first-degree murder and use of a firearm during the commission of murder. We affirm the trial court's judgment.

*Affirmed*.